Greenebaum Sons Bank & Trust Company, Trustee et al., and Lloyd J. Smith, Receiver, Appellees, v. John W. Kingsbury et al., Defendants, on Appeal of Walter R. Ceperly and Annetta S. Ceperly, Appellants.

Gen. No. 32,066.

Opinion filed April 3, 1928.  Rehearing denied April 17, 1928.

324

. ELMER D. BROTHERS, for appellants; WILLIAM A. ADAMS and LESTER C. CHILDS, of counsel.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON and GUSTAV E. BEERLY, for appellees; HENRY L. STERN and and JAMES W. HYDE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The trust deed sought to be foreclosed conveyed not only the premises in question but also the "rents, issues and profits" thereof, as security for the debt, and provided for the appointment of a receiver upon the filing of a bill to foreclose, without regard to the solvency or insolvency of the person or persons liable for the debt and without regard to the value of the premises. It is well settled by Illinois decisions that the rents and profits of land can be conveyed by mortgage, and

that, when so conveyed, they constitute a *primary fund* equally with the land for the payment of the debt. (*Ortengren v. Rice,* 104 Ill. App. 428, 432; *McLester v. Rose,* 104 Ill. App. 433, 436; *First Nat. Bank of Joliet v. Illinois Steel Co.,* 174 Ill. 140, 148; *Bagley v. Illinois Trust & Savings Bank,* 199 Ill. 76, 78.) In the *Ortengren* case it is said: "Where the rents and profits, together with the land, are pledged for the payment of the debt, the case is wholly different. Then, upon default in payment and foreclosure, the rents and profits are, as is the land, primarily liable for the debt. It is therefore a matter of indifference that the real estate is ample security, and that the debtor is solvent. The contract of the parties governs. Such a contract does not interfere with the equity of redemption. It is lawful, and the courts will enforce it as it is made, i. e., give the rents and profits, as well as the real estate, to the mortgagee as a fund to be applied to the extinguishment of his debt." In 1 Jones on Mortgages (6th Ed.), sec. 27, p. 22, referring to the law in Illinois, it is said: "Upon breach of the condition the mortgagee has the legal title, and may bring his action without giving the party in possession any notice to quit. The condition is broken when one or more installments are due and unpaid, * * *. The mortgagee may pursue all his remedies at the same time, * * *. Except as against the mortgagee, the mortgagor is regarded for all beneficial purposes as the owner of the land. Moreover, the mortgagor or a purchaser from him is the legal owner of the mortgaged estate as against all persons, *except the mortgagee or his assigns,* who are the legal owners for one purpose only, namely, the enforcement of the debt secured." In the same textbook, section 776, page 818, the author says: "Upon a breach of the condition the mortgagee may enter, and treat the lessee as a trespasser, and without notice bring ejectment. If the mortgagee after entry accepts rent from such lessee, the relation of landlord and ten-

ant is thereby created, but this tenancy will be deemed one from year to year, and not for the term of the original lease. * * * Whether the tenant has actual notice of the mortgage or not makes no difference if the mortgage be recorded; it is then constructive notice, and affects one who becomes the tenant of the mortgagor as much as it affects a purchaser. The mortgagor has no implied power to bind the mortgagee by lease." In 16 R. C. L. 598, § 77, it is said: "Where the common law theory prevails that a mortgage in fee carries the legal estate, a mortgagor though he remains in possession after the execution of the mortgage cannot give a lease to a third person which will have any effect as against the mortgagee, and such a lease does not itself create the relation of landlord and tenant between the lessee and the mortgagee; there is in such a case no privity of estate or contract between the mortgagee and the lessee of the mortgagor. And the mortgagee may on entry for condition broken * * * treat the lessee as a trespasser and bring ejectment without any notice to quit." The author cites in support of his statements, among other cases, the case of *Gartside v. Outley*, 58 Ill. 210, an action in ejectment, wherein it is said (pp. 213–214): "The lease granted to Twiss was for no definite period, but was to run so long as there was coal to mine. * * * It is not doubted that the lease, being subsequent to the mortgage, could have no force as against the rights of the mortgagees." And it is also said (p. 215): "The rule of the common law is well established, that the mortgagor can not, without the consent of the mortgagee, execute a lease that will prevail against the rights of the mortgagee, and it has been uniformly held that the entry of the mortgagee *puts an end to the lease*." And in the ejectment case of *Taylor v. Adams*, 115 Ill. 570, 575, it is said: "A mortgagor, or his grantee, can not make a lease of mortgaged premises which will give greater right than he possesses, and that will interfere

with the right of the mortgagee to enter for condition broken." In *Gaynor v. Blewett,* 82 Wis. 313, 316, it is decided that, "so far as the possession of the premises is concerned, the appointment of the receiver had the effect of an equitable ejectment." (See, also, *Ortengren v. Rice,* 104 Ill. App. 428, 431.) In the foreclosure suit of *Niccolls v. Peninsular Stove Co.,* 48 Ill. App. 317, 321, where the rents and profits of the premises were pledged by the mortgage, it is said: "The right of appellant to the rents in question secured to him by the mortgage and the action of the court in appointing the receiver *could not be contracted away by the mortgagor.*" In *Mutual Life Ins. Co. v. Spicer,* 12 Hun (N. Y.) 117, a pending foreclosure suit, it is held that where a person, having knowledge of the mortgage, has obtained possession of the mortgaged premises under an agreement with the mortgagor, he may be required to surrender such possession, or pay a reasonable rent therefor to the receiver appointed by the court to collect the rents and profits of the premises for the benefit of the mortgagee. In the foreclosure suit of *Harris v. Foster,* 97 Cal. 292, 295, it is stated as a well-established rule "that a subsequent grant or lease of mortgaged premises is subject to the prior mortgage, if the purchaser or lessee had either actual or constructive notice of such mortgage"; and that "if the law were otherwise, it would be in the power of the mortgagor to materially diminish the value of the mortgaged property, as security for the debt for which the mortgage was given, by simply leasing it for a long period and collecting the rent in advance, or by leasing it for such period for a nominal rent." And it has frequently been decided that a tenant in possession under the mortgagor, who, having notice of the mortgage, pays rent in advance to the mortgagor does so at his peril, and that, if a receiver is appointed during the period for which the rental has been paid in advance, such tenant may be required to pay the same again

to the receiver for the period following the latter's appointment. (41 C. J. 634, § 611; *Gaynor v. Blewett,* 82 Wis. 313, 315; *Henshaw, Ward & Co. v. Wells,* 28 Tenn. 567, 582; *Fletcher v. McKeon,* 71 App. Div. 278, 75 N. Y. Supp. 817, 819.)

In the light of these authorities, and in view of the pleadings in the present case, the provisions of the trust deed sought to be foreclosed, the evidence, and the findings of the master sustained by the evidence, we are of the opinion that the court did not err in entering the order appealed from. The trust deed was given to secure a building loan of $225,000, to be used in the erection of the apartment building which was afterwards erected upon the premises. By its terms, as security for the debt, not only were the land and the building to be erected thereon conveyed, but also, as a primary fund, the rents and profits of the premises. It is a well-known fact that one of the considerations that actuate a lender of money in making a building loan on apartment building property is its probable productivity in fair, market rentals, and it is quite probable that, if Kingsbury had not agreed that the rents and profits be conveyed as security, as well as the land and building, the loan in the present case would not have been made. The trust deed was recorded on December 31, 1923, and the Ceperlys had constructive notice of its terms long before they made their written contract with Kingsbury of May 10, 1924. Furthermore, it appears from the evidence, and as found by the master, that, on September 16, 1924, the board of directors of the Glen-Lunt Co. (of which company Walter R. Ceperly afterwards became president) adopted by-laws; that in them is contained the form of lease to be given to all lessees, or to the so-called "cooperative owners" of apartments in the building; that in one of the paragraphs of said form it is provided that "the lessee accepts this lease *subject to the lien of the mortgages on said premises*"; and that at another

meeting of the directors of the company, held October 1, 1924, a resolution was adopted stating that Ceperly was entitled to a stockholder's lease of apartment B-2. The evidence further disclosed, and the master found, that on September 1, 1924, the Ceperlys received the keys and went into possession of said apartment and have remained in possession ever since; that, although often requested by the receiver, they have not paid any rent to him therefor, and that the reasonable fair rental or commercial value of the apartment, which consists of five rooms, is $110 per month.

The master further found that on the hearing before him the Ceperlys, and other stockholders of the Glen-Lunt Co. holding leases of and occupying other apartments in the building, took the position that "complainants had entered into a partnership arrangement of some kind or character" with Kingsbury, and that "complainants were advised of and acquiesced in his actions in making the various tenant leases, and that they should be estopped in this proceeding from demanding the payment by the stockholders, holding tenant leases, of a fair and commercial rental value of the apartments occupied by them," but the master further found, as to said contention, that "no proof of any kind sufficient to charge complainants with notice of and acquiescence in the actions of said Kingsbury or the Glen-Lunt Building Corporation has been offered, and no reason has been shown why complainants should be estopped from claiming the rentals conveyed under the trust deed." As to all respondents, including the Ceperlys, the master further found that they were in "similar unfortunate positions," in that each had purchased stock of the Glen-Lunt Co. with the knowledge that the premises were subject to the lien of the trust deed, which conveyed not only the premises but the rents and profits thereof as security for the debt therein mentioned, and in that "in the lease ac-

cepted by each (except the Ceperlys who by their answer demand the issuance of stock and a lease to them in accordance with their contract) it is provided: 'Whereas the capital stock of the lessor consists of 2394 shares of stock of no par value, and the lessee is the owner of (blank) shares of said stock, *by reason of which ownership this lease is granted,* pursuant to resolution of the board of directors of the lessor (Glen-Lunt Co.) under the authority of the by-laws of the lessor.' " And the master further found that the payment of the various sums of money by respondents, including the Ceperlys, "practically amounts to the payment by them of that much rent in advance." And the master further found that the questions of the solvency or insolvency of Kingsbury, whether the premises are adequate or inadequate security for the indebtedness secured by the trust deed, whether the foreclosure is for the purpose of collecting the whole or only a part of said indebtedness, whether the contract amount paid by the Ceperlys or the assessments paid by the other stockholders of the Glen-Lunt Co. are adequate or inadequate, and whether a sale of the premises will result in a deficiency, "do not enter into this proceeding"; that the complainant trustee is entitled to have the receiver collect the fair cash or commercial rental value of each apartment in the building during the pendency of the foreclosure proceeding; but that neither the maker of the bonds nor the Glen-Lunt Co. should be allowed to profit by respondents being compelled to pay more than the amount contracted for, as in the case of the Ceperlys, or more than the monthly assessments as passed by the stockholders, as in the case of the other respondents. We think that all of these findings of the master, confirmed by the court, are sustained by the evidence or the law or both.

Counsel for the Ceperlys contend in substance that, in view of the written agreement of the Ceperlys with

Kingsbury of May 10, 1924, and their taking posses-
sion by virtue thereof of apartment B-2 on Septem-
ber 1, 1924, they are entitled as lessees to the posses-
sion of the apartment "at the nominal rental of $1 per
year" until a foreclosure decree be entered and until
the period of redemption shall have expired, and in
addition to have heat, refrigeration and janitor serv-
ice furnished to them free of charge, and that, not-
withstanding the provisions of the prior trust deed of
which they had notice, wherein the rents and profits
of the premises were conveyed as security for the
building loan, the receiver can only collect rent from
them at the rate of $1 per year for use and occupation
of the apartment. On principle and reason, sustained
by the authorities above mentioned, we do not think
there is any merit in the contention. Under the trust
deed, wherein the rents and profits were conveyed, if
Kingsbury, the mortgagor, had been in possession of
the apartment, after default and proper appointment
of a receiver under the bill to foreclose, he could either
have been compelled to pay a reasonable, commercial
rental therefor or to turn over possession to the re-
ceiver, whose duty it would have been to rent the apart-
ment at a fair rental value so long as he remained in
possession. Kingsbury, by his agreement with the
Ceperlys, could not give them any greater rights, as
against the mortgagee, than he himself had. To hold
otherwise would be tantamount to holding that a mort-
gagor, who had conveyed the rents and profits of the
premises as security for his debt, could, by making a
lease prior to default, abridge the rights of the mort-
gagee or the receiver to possession, after default, by
the simple act of making such a lease. If counsels'
contention be sound, Kingsbury would have the right
to make 35 other similar agreements as to the 35 other
apartments with other persons, and, had this been
done, the result would be that the receiver upon taking
possession of the premises under the bill to foreclose,

could not obtain legal possession of any of the apartments for the benefit of the mortgagee, would have total annual rental receipts of $36, and have liabilities in a large sum for taxes, upkeep, heat, refrigeration, janitor service, etc. Such a result would be without reason or law to sustain it.

Counsel further contend in substance that the Ceperlys, having acquired subject to the provisions of the trust deed a lease of the apartment for 99 years from Kingsbury for a nominal annual rental, and not having expressly assumed to pay any part of the indebtedness secured by the trust deed, may properly require the complainant trustee "to exhaust its remedy against the mortgagor (Kingsbury) and the corpus of the remaining property before resorting to them for the commercial rent," upon the doctrine of marshalling of assets. It is said in *Metzger v. Emmel,* 289 Ill. 52, 62: "That doctrine is, that where a creditor has a lien upon two securities with which to make his debt and another party has an interest in one of the securities, that party has a right to compel the creditor first to exhaust the security in which the other party has no interest." We fail to see how this doctrine is applicable to the present case, or how the doctrine of "sale in the inverse order of alienation" is applicable, as is also contended. Counsel argue that the Ceperlys should not be required to pay any rentals until after the premises are sold under a foreclosure decree and it has been determined that there is a deficiency. But the order appealed from does not purport to dispose of the rentals to be collected by the receiver, but only directs that they be collected and *conserved,* so that they may be under the control of the court when it is finally determined to whom they shall be paid.

For the reasons indicated the order appealed from is affirmed.

*Affirmed.*

Barnes, P. J., and Scanlan, J., concur.