Lawn Savings and Loan Association, Plaintiff-Appellee, v. Howard B. Quinn, Defendant-Appellant, La Salle National Bank, as Trustee, Under Trust No. 28563, et al., Defendants-Appellees.

Howard B. Quinn, et al., Plaintiffs-Appellants, v. Lawn Savings & Loan Association, La Salle National Bank, as Trustee, Under Trust No. 28563, and Federal Savings & Loan Insurance Corporation, Defendants-Appellees.

Gen. Nos. 50,419 and 51,000.

First District, Fourth Division.

March 17, 1967.

Rehearing denied April 14, 1967.

Samuel E. Hirsch and Solomon Sachs, of Chicago, for appellant.

David Krueger, Henry W. Kenoe and Raphael Fine, of Chicago, for appellee, Lawn Savings and Loan Association.

McCarthy, Witry, Lyon & McCarthy, of Chicago, for appellee, Federal Savings and Loan Insurance Corporation.

MR. JUSTICE McCORMICK delivered the opinion of the court.

In the case of Lawn Savings and Loan Association, plaintiff, v. Howard B. Quinn and La Salle National Bank, as trustee, under trust No. 28563, et al., defendants (our No. 50,419), a judgment was entered in the Circuit Court of Cook County in favor of the plaintiff, Lawn Savings and Loan Association, against defendants, Howard B. Quinn and La Salle National Bank.

In the case of Howard B. Quinn and Charlotte J. Quinn, plaintiffs, against Lawn Savings and Loan Association, La Salle National Bank, as trustee, under trust No. 28563, and Federal Savings & Loan Insurance Corporation (our No. 51,000), a judgment was entered against the plaintiffs and in favor of the defendants. The two cases were consolidated in this court, and we will first discuss Lawn Savings and Loan Ass'n v. Howard B. Quinn and La Salle National Bank, as trustee, our No. 50,419.

The appeal arises out of orders entered in the course of a proceeding to foreclose a real estate mortgage. No evidence was introduced. The defendant, Howard B. Quinn (hereinafter called Quinn), was the holder of a certificate of beneficial interest under a trust agreement in which the defendant, La Salle National Bank (hereinafter called La Salle), was the trustee of a land trust of which Quinn was the beneficiary. La Salle executed a mortgage note and mortgage to plaintiff, Lawn Savings and Loan Association (hereinafter called Lawn); when the Lawn mortgage went into default Lawn filed a complaint to foreclose against La Salle, Quinn, and a number of unpaid mechanics' lien claimants. The cer-

306

tificate of beneficial interest had been pledged by Quinn to Beverly Savings and Loan Association (hereinafter called Beverly), a party defendant, as security for a loan. Beverly was also the lessee of a portion of the premises which had been constructed on the trust res. Beverly assigned its interest in the lease and its interest in the certificate of beneficial interest to Federal Savings and Loan Insurance Corporation (hereinafter called Federal), which association was in possession of the property demised by the lease. Federal filed a counterclaim in the foreclosure suit, alleging that the mortgage sought to be foreclosed was fraudulent and unlawful, and asked that Federal's right in the property be decreed to be superior to Lawn's mortgage. Trial of the difficult issues raised by the counterclaim was avoided by a stipulation between Lawn and Federal. Thereafter the court entered a decree on the counterclaim and the stipulation. The instant appeal is taken from an order confirming the sale of the beneficial interest and from an order overruling Quinn's objections to the decree on the counterclaim.

It appears that La Salle held title in a land trust to the property located at 8001–8025 South Western Avenue, Chicago. The certificate of beneficial interest which was designated only as personal property, was held by Quinn. On September 27, 1961, La Salle executed a mortgage note and a mortgage to Lawn for $2,100,000. The mortgage waived the right of redemption. Quinn thereupon undertook the construction of a 9-story commercial building on the property. On February 6, 1962, Beverly entered into a lease with La Salle for half of the basement and the first three floors of the building. At this time Quinn was the owner of a large majority of the permanent reserve shares of Beverly, and was chairman of its board of directors. On July 18, 1963, Quinn signed a note payable to Beverly for $500,000, and

pledged as collateral his beneficial interest in the trust at La Salle.

A default occurred in the mortgage payments and Lawn filed its complaint to foreclose its mortgage on September 13, 1963. On October 15, 1963, an order was entered designating Lawn as mortgagee in possession. Lawn demanded payment of $12,500 monthly rental from Beverly, the lessee. The lease was for a term of 20 years. Beverly became financially involved, and on October 25, 1963, adopted a plan of voluntary liquidation, and Federal acquired its assets and assumed its liabilities under its deposit insurance agreement.

On February 28, 1964, Federal filed a counterclaim in Lawn's foreclosure suit. In Count I it alleged that Quinn had fraudulently disbursed $1,187,325.36 of Beverly's funds toward the construction and that Lawn knew, or should have known, of the fraudulent disbursements. This count prayed that Federal be declared entitled to a lien upon the real estate, or that the real estate be impressed with a trust in its favor for such advance. Count II of the counterclaim alleged that Quinn, by reason of his ownership of the beneficial interest in the La Salle trust and his domination and control of Beverly, had fraudulently caused Beverly to execute the lease of February 6, 1962, and prayed that the lease be set aside. On March 18, 1964, Lawn filed its answer to Federal's counterclaim.

On October 2, 1964, Lawn moved the court for leave to file its stipulation with Federal providing for the entry of a decree on Federal's counterclaim. This stipulation provided: 1) that Federal be decreed to have no lien on the property in the foreclosure and not to be entitled to have the said property impressed with a trust in its favor as sought by Count I of its counterclaim; 2) that the lease between La Salle and Beverly, dated February 6, 1962, be decreed to be of no further legal

effect; 3) that Federal continue in possession of the property under the terms set forth in the stipulation; and 4) that Federal should be declared to have succeeded to all interests of Beverly in the property.

The court entered an order granting leave to all parties to file their objections to the motion of the plaintiff for the entry of the decree pursuant to this stipulation. Neither Quinn nor La Salle were parties to the stipulation. On October 7, 1964, Quinn and La Salle filed objections to the termination of the lease pursuant to the stipulation and to the entry of the decree in accordance with the stipulation.

On October 14, 1964, Quinn and La Salle filed a petition setting forth the execution by Quinn of his July 18, 1963, note to Beverly for $500,000, and the collateral pledge of his beneficial interest in the La Salle trust, asserting the present ownership of the note and collateral by Federal. The petition requested the court to enter an order that in the event of the aforesaid beneficial interest being offered for sale, Federal give five days' notice of the proposed sale to La Salle, Quinn, and Robert Irmiger, attorney. The court ordered that the notice asked for in the petition in the event of the sale of the beneficial interest by Federal should be given.

On October 22, 1964, Federal filed a written motion to strike the answer of Quinn and La Salle to its counterclaim and to strike the objections of Quinn and La Salle to the entry of a decree on the counterclaim, alleging as a basis, the refusal of Quinn to testify to a discovery deposition proceeding. In support of this motion Federal filed a transcript of the testimony of Quinn at a discovery deposition in which Quinn declined to answer all questions regarding the matters in issue upon the ground that his answer might incriminate him. This transcript does not appear in the record on appeal. It was, however, presented to and considered by the court as stated in the court's order of October 23, 1964.

At the hearing on October 22, 1964, Quinn's ownership of the beneficial interest in the La Salle trust was urged in support of his objection to the entry of a decree terminating the Beverly lease pursuant to the stipulation. In order to obviate the objection, counsel for Federal asked Judge Harrington to conduct a collateral sale of this beneficial interest in accordance with the pledge in Quinn's $500,000 note. Judge Harrington agreed to conduct the sale, and the following morning, October 23, 1964, an order was accordingly prepared and entered. This order set the sale of the beneficial interest for November 5, 1964, and continued the objections to the entry of a decree on the stipulation "for hearing immediately after the conclusion of such sale."

On October 30, 1964, Solomon Sachs and Samuel E. Hirsch substituted for Robert Irmiger as attorneys for Quinn and La Salle. On November 2, 1964, Quinn and La Salle filed a written motion to vacate the order of October 23, 1964, and were granted leave to file an amended answer to Federal's counterclaim.

On November 4, 1964, Quinn and La Salle filed an "amended answer regarding petition of plaintiff seeking to sell defendant Howard B. Quinn's beneficial interest under trust agreement dated September 26, 1961 between Quinn and La Salle National Bank, trustee under trust No. 28563." On the same day Quinn and La Salle filed "amended answer and objections to the proposed stipulation sought to be entered into between the plaintiff herein and the counterclaimant herein, seeking to cancel a written lease dated February 6, 1962." The answer asked the court to deny the petition and motion of Lawn and Federal to enter the proposed stipulation, and that an order be entered declaring the lease to be valid. Also on the same day, Quinn and La Salle filed an amended answer to Federal's counterclaim, denying and putting in issue the allegations of the counterclaim.

On November 5, 1964, the following steps were taken before Judge Harrington:

**First:** After a determination that the certificate of beneficial interest was personal property as opposed to an interest in real estate, an order was entered denying Quinn's motion to vacate the order of October 23, 1964.

**Second:** After some discussion between the court and Quinn's attorney, who did not make any formal objection, there was a sale of the beneficial interest, subject to any rights Quinn might have therein.

**Third:** The entry of the order confirming the sale and the ownership of the beneficial interest by Federal. This is the order from which one appeal was taken.

**Fourth:** The filing of the stipulation between Lawn and Federal, copies of which had been furnished to the parties earlier.

**Fifth:** The entry of the order denying Quinn's objections to the entry of a decree on the counterclaim pursuant to stipulation. This is the order from which the other appeal was taken.

**Sixth:** The entry of the decree [1] on the counterclaim, pursuant to the stipulation, dismissing Count I thereof in which Federal sought a lien on the property in foreclosure or to have the property impressed with a trust in its favor, decreeing that the lease was of no further legal effect as prayed in Count II, and setting forth the terms of Federal's occupancy of part of the building.

---

[1] This decree further provided that "this is a final decree as to the matters involved in said counterclaim and that no reason exists for the delay of any appeal."

On December 15, 1964, a substitution of attorneys for La Salle was filed by which counsel (who were Quinn's attorneys) withdrew their appearance and counsel for Federal entered their appearances for La Salle.

On January 4, 1965, Quinn filed a notice of appeal from the order of Judge Harrington dated November 5, 1964, denying his objections to the entry of a decree on the counterclaim of Federal pursuant to stipulation. Also on January 4, 1964,[2] Quinn filed a notice of appeal from the order entered by Judge Harrington on November 5, 1964, which order recited that the court, on November 5, 1964, in accordance with its order of October 23, 1964, and upon due notice having been given, conducted a sale in open court at public auction of the beneficial interest of Quinn; that Federal made the highest and best bid in the sum of $25,000, and is the absolute owner of the beneficial interest under the trust agreement between Quinn and La Salle. The order further recited that the judgment heretofore recovered by Federal against Quinn shall be reduced and partially satisfied to the extent of "the aforesaid sum bid for said beneficial interest."

It appears that after the notices of appeal were filed a decree of foreclosure was entered in the trial court by Judge Harrington. The property was bid in by Lawn at a foreclosure sale, a master's deed was entered, and the period for redemption by creditors has expired. No appeal has been taken from the decree of foreclosure.

Defendants' theory of the case is that (1) the trial court lacked jurisdiction to order and hold the sale of Quinn's beneficial interest in the trust; (2) the court, in ordering the sale of the beneficial interest, was per-

---

[2] The abstract shows that the second notice of appeal was filed on January 7. The record shows that it was filed on January 4. The abstract shows that proof of service was filed on January 7, but the record shows it was not filed until January 18.

mitting a strict foreclosure in violation of the statute; and (3) the trial court had no power to terminate the 20-year lease by entering an order upon stipulation between Federal and Lawn.

We will first consider defendants' contention that the trial court was without jurisdiction of the subject matter. Defendant Quinn argues that the certificate of beneficial interest in the trust represented a security of personal property for a debt which was not connected with the mortgage sought to be foreclosed, and therefore, it was not properly within the purview of the court, and that the court could not enter any orders with reference to the certificate. In support of his contention Quinn cites and relies on City of Chicago v. Chatham Bank of Chicago, 54 Ill App2d 405, 203 NE2d 788. In that case the City brought suit against the Bank as trustee of a land trust, and the Chicago Title and Trust Company as trustee under a trust deed, to enforce provisions of certain building ordinances. The appellant, Gale Johnson, who owned the beneficial interest in the land trust, was not a party, but appeared pro se and defended. Later the owner of the mortgage notes which were signed by Chatham Bank as trustee without personal liability, but guaranteed by Gale Johnson, filed a counterclaim to foreclose the mortgage. The foreclosure sale resulted in a deficiency for which they took judgment against Gale Johnson as guarantor. On appeal the first issue considered was whether "the trial court had any jurisdiction to enter such order, since Gale Johnson had not executed either the notes or the mortgage in question as an obligor, but had signed the notes only as a guarantor. . . ." Reversing the judgment against Gale Johnson, the appellant, the court held that a guarantor is not liable for a deficiency judgment in a foreclosure action.

Quinn cannot bring himself within the ambit of that case. No question is presently raised regarding his lia-

313

bility on the mortgage notes. The issue here is whether or not the trial court had jurisdiction over the certificate of beneficial interest, an issue not raised in the Chatham case. All the other cases Quinn relies on only determine the liability of one who is not a maker of the mortgage note.

 Defendant Quinn has correctly stated in his brief that the question of absolute lack of jurisdiction may be raised at any time, even for the first time on appeal. Moreover, a party or parties cannot by consent confer jurisdiction of the subject matter on the court. A court of chancery which has obtained jurisdiction of a controversy on any ground or for any purpose, will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter. ILP, Chancery, § 17. In Keith v. Henkleman, 173 Ill 137, 50 NE 692, the Supreme Court said:

> "It is well settled that, when a court of equity has jurisdiction of a cause for one purpose, it will retain such jurisdiction for all purposes. When the controversy requires any purely equitable relief, such as will give a court of equity the right to act, the court will proceed to a determination of all the matters at issue, and, in doing so, it may establish purely legal rights and grant legal remedies, which would otherwise be beyond its power. The concurrent jurisdiction of equity may thus be exercised over legal causes of action, in order to avoid a multiplicity of suits."

In Oppenheimer Bros., Inc. v. Joyce & Co., 20 Ill App 2d 34, 154 NE2d 856, a complaint was brought in equity for an injunction restraining a defendant from breaching a contract not to place insurance with any brokers other than the plaintiff. The complaint further sought an accounting. The defendant sought to have these is-

sues separated; made a jury demand and prayed that this aspect of the case be removed to the law side. The court held that the second issue might be determined along with the principal one. The court said:

> "Where equity has acquired jurisdiction for the purpose of administering equitable relief, it may determine all matters at issue, although by so doing it may grant legal rights and establish legal remedies at the same time. McIntyre v. McIntyre, 287 Ill 544, 550 (1919); Keith v. Henkleman, 173 Ill 137, 141 (1898). This matter should be completely disposed of in chancery, where unquestionably such issues can receive a more expeditious and less cumbersome hearing than would be involved in presenting the issues to a law court."

In the case before us it is undisputed that the trial court had jurisdiction in equity to foreclose Lawn's mortgage and to pass on Federal's prayer to impress the property with a lien or trust and to cancel the lease. At the hearing on October 22, 1964, Quinn filed an objection to the entry of the decree terminating the Beverly lease. The objection was bottomed on Quinn's allegation of ownership of the beneficial interest in the La Salle trust. The $500,000 note signed by Quinn on July 8, 1963 (which was payable to Beverly and in which note Quinn pledged as collateral his beneficial interest in the trust in which La Salle held title to the real estate), was in Federal's possession under and by virtue of Beverly's plan of voluntary liquidation. Illinois Revised Statutes 1963, c 26, § 9–504(3) provides for the sale of collateral as follows:

> "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and

315

place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . ."

■ The trial court, under the authorities heretofore cited, had jurisdiction to conduct the sale, and it seems that Quinn recognized this rule, inasmuch as in his petition of October 8, 1964, he stated: "The Counterclaimant, Federal Savings and Loan Insurance Corporation, by assignment is now the owner of said note and is Successor-Assignee of the aforesaid beneficial interest, and *said Counterclaimant may offer said beneficial interest for sale pursuant to the terms of the aforesaid note of July 18, 1963.*" (Emphasis supplied.) The only prayer in the petition is that in the event of a sale five days' notice should be given to Quinn, his attorney, and La Salle. The sale was proper and well within the trial court's jurisdiction. The pledged beneficial interest was properly and legally disposed of.

Quinn also argues that the sale of the beneficial interest constituted a strict foreclosure in violation of law. Horney v. Hayes, 11 Ill2d 178, 142 NE2d 94, is determinative of that issue. In that case Horney was the owner of the beneficial interest in a land trust. He assigned this interest to Hayes as security for a loan and when the loan was not repaid, Hayes, proceeding under a power of sale conferred by the assignment, sold the beneficial interest to one Walsh. Thereafter, Horney brought suit to set aside the sale and certain subsequent conveyances, alleging among other things that the transaction constituted a mortgage in equity in real estate. The Supreme Court held that the trust agreement creating the land trust provided that the entire legal and equitable title was to be in the trustee in fee simple, and the interest of the beneficiary was expressly declared to be personal property as security; that consequently, Horney had no equity of redemption with respect there-

316

to. The court held that this transaction was not a mortgage in equity, even though it bore a superficial resemblance to the facts in DeVoigne v. Chicago Title & Trust Co., 304 Ill 177, 136 NE 498. In the Horney case the court said:

". . . The pledge in the case at bar is on an entirely different footing. . . . It does not provide for sale of the real estate, as in the DeVoigne case, nor was the trust itself created as security for a debt. The transaction between plaintiff and Hayes occurred subsequent to the creation of the trust, and concerned only the beneficial interest represented by the certificate."

■ ■ In the present case there is no requirement in the Quinn pledge of the beneficial interest as collateral that the real estate be sold. Further, the trust was created on September 27, 1961; it was not until July 18, 1963, that Quinn signed a note payable to Beverly for $500,000 and pledged as collateral his beneficial interest in the trust at La Salle. The legal title to the real estate was in La Salle, and Quinn did not—nor could he—pledge real estate as security for the debt. The beneficial interest was only personal property and the sale of that interest does not fall within the prohibitions of the statute upon which Quinn relies.

Defendant Quinn further argues that the court had no power to terminate the 20-year lease by entering an order upon stipulation of Federal, the lessee's assignee, and Lawn, the mortgagee. The certificate of beneficial interest had been pledged by Quinn to Beverly, a party-defendant. Federal subsequently acquired all of Beverly's burdens; among these were the certificate of beneficial interest and the lease. Federal then properly filed a counterclaim against Lawn. Count II of the counterclaim alleged that Quinn, by reason of his ownership of

317

a certificate of beneficial interest in the La Salle trust and his domination and control of Beverly, had fraudulently caused Beverly to execute the lease of February 6, 1962, and prayed that the lease be set aside. This put the issue of the validity of the lease before the court. On authority of Keith v. Henkleman, 173 Ill 137, 50 NE 692, and Oppenheimer Bros., Inc. v. Joyce & Co., 20 Ill App2d 34, 154 NE2d 856, the trial court, acting as a court of equity, having obtained jurisdiction of the controversy for any reason, retains jurisdiction in order to determine all matters at issue, even though legal rights and remedies may be involved. These cases have been heretofore discussed at length.

■ Finally, the defendant, Quinn, contends that it was highly improper for the court to cancel the 20-year lease on stipulation of Lawn, the mortgagee, and Federal, the petitioner, especially when Federal did so after depriving Quinn of his right to have his attorneys represent La Salle, the trustee, and instead, had their lawyers represent La Salle. However, as plaintiff Lawn points out in its brief, the mortgage expressly conferred upon Lawn complete power to deal with the lease. Following the description of the real estate, the mortgage agreement states in part:

> ". . . and also together with all easements and *the rents, issues and profits of said premises which are hereby pledged,* assigned transferred and set over unto the Mortgagee, whether now due or hereafter to become due under or by virtue of any lease or agreement for the use or occupancy of said property, or any part thereof, whether said lease or agreement is written or verbal and whether it is now or may be hereafter existing or which may be made by the Mortgagee under the power herein granted to it; it being the intention hereof (a) to pledge said rents, issues and profits on a parity with said

318

real estate and not secondarily and such pledge shall not be deemed merged in any foreclosure decree, and (b) *to establish an absolute transfer and assignment to the Mortgagee of all such leases and agreements and all the avails thereunder,* together with the right in case of default, either before or after foreclosure sale, to enter upon and take exclusive possession of, manage, maintain and operate said premises, or any part thereof, make leases for terms deemed advantageous to it, *terminate or modify existing or future leases,* . . . and in general exercise all powers ordinarily incident to absolute ownership, . . ." [Emphasis added.]

The agreement clearly gives Lawn the exclusive right to deal with present or existing leases. The validity of such an agreement was sustained in Ortengren v. Rice, 104 Ill App 428, where the court said:

"Where the rents and profits, together with the land, are pledged for the payment of the debt, . . . The contract of the parties governs. Such a contract does not interfere with the equity of redemption. It is lawful, and the courts will enforce it as it is made, . . ."

There is no question that under the mortgage Lawn could have brought an action of ejectment. Since the mortgage was in default Lawn had an unassailable right "to enter upon and take exclusive possession of, . . ." The lease was made subsequent to the execution and recording of the mortgage, and was therefore subordinate to the rights of the mortgagee. Had Lawn brought an action of ejectment Federal, as the successor in interest, would be in the very same position as it is now. The stipulation merely prevented a multiplicity of suits. In addition Federal, having bought Quinn's certificate of beneficial interest, which was not subject to any equity

of redemption, had the right to direct the action of La Salle, the lessor. Federal could have requested a cancellation of the lease. Whatever Lawn's reasons for cancelling the lease may have been, they are of no moment here. Lawn's right to act as it did was absolute.

Federal states in its brief:

"Since this appeal was started, the decree of foreclosure has been entered in the trial court, the property has been bid in by Lawn at foreclosure sale, the Master's deed has issued, and the period for redemption by creditors has expired, as has also the time for appeal. The ownership of the beneficial interest in LaSalle's trust which held title to the equity is hence a matter of academic interest only."

Quinn's notices of appeal, as we have pointed out, are only from orders entered by the court, and no appeal is taken from the decree entered on the same date. While there may be some question as to the propriety of the notices of appeal, we think they can be properly treated as including an appeal from the court's decree entered on November 5, 1964, on Federal's counterclaim, which decree was in accordance with the stipulation between Lawn and Federal.

The decree held that Federal had no lien on the property sought to be foreclosed, nor was it entitled to have the property impressed with the trust in its favor. The decree further provided that the lease between La Salle and Beverly should have no further legal effect, and that possession by Federal of the property demised by the said lease should continue upon certain prescribed conditions, and that Federal has succeeded to all interests of Beverly and the liquidators of Beverly.

The decree of the trial court and the orders entered on November 5, 1964, should be sustained. One order confirmed the sale by the court of the beneficial interest

320

and the ownership of the same by Federal. The other order denied Quinn's objections to the entry of a decree on the counterclaim pursuant to the stipulation.

While the appeal was pending in Lawn Savings & Loan Ass'n v. Howard B. Quinn and La Salle National Bank (Appellate Court No. 50,419), Howard B. Quinn and Charlotte J. Quinn, his wife (hereinafter called the Quinns), brought an action against Lawn Savings & Loan Association, La Salle National Bank, as trustee, under trust 28563, and Federal Savings & Loan Insurance Corporation, in the Circuit Court of Cook County (Appellate Court No. 51,000).

The decree of foreclosure on the mortgage had been entered in the trial court, and Lawn was the purchaser on the foreclosure sale. As we have pointed out, no appeal was taken from the foreclosure. In case No. 51,-000 the complaint prayed that the court remove the interests of defendants, Lawn, La Salle and Federal, as a cloud upon Quinn's title, and to declare null and void all proceedings in the case we have just discussed (No. 50,419). The Quinns then filed an amended complaint by leave of court. On June 17, 1965, the defendants, Lawn, La Salle and Federal, moved to strike the amended complaint and dismiss the cause of action. The plaintiffs were then given leave to file amendments to their amended complaint. Thereupon the defendants moved to strike the amended complaint as amended. On August 31, 1965, the trial court dismissed the amended complaint as amended and dismissed the cause of action. From this order the Quinns take this appeal.

In the amended complaint as amended the Quinns pray that the court direct that the orders and decree for the sale and the approval of the sale of Quinn's beneficial interest and the order canceling the 20-year lease and exonerating Federal from paying any rental, either under the lease as assignee or for use in occupancy of the demised or occupied premises, be held "as a nulli-

321

ty, void, and be removed as a cloud upon the title of the property involved."

The Quinns' theory in this court is that the trial court did not have any jurisdiction of the subject matter in the foreclosure proceedings, nor did it have jurisdiction to conduct a sale of a certificate of beneficial interest in the property sought to be foreclosed. All of the matters raised in the appeal in Case No. 51,000 have been fully covered in the portion of this opinion dealing with the appeal in Case No. 50,419. Further, the complaint constitutes a collateral attack on the adjudications of the trial court since they are the same adjudications appealed from in Case No. 50,419.

The only new matter raised in the instant case is that Federal, by appearing in the trial court in the foreclosure action, was not entitled to relief because it was conducting an insurance and surety business under the laws of the State of Illinois without securing a license to conduct such business. It is apparent that the statute relied on by the Quinns is not applicable. Under the National Housing Act, 12 USCA § 1725(c)(4), Federal had the right to bring an action in any Illinois court.

██ ██ Illinois Revised Statutes 1963, c 73, § 723, provides that before a certificate of authority to transact business in this State is issued to a "foreign or alien company," such company must satisfy the director that the company has been properly organized under the laws of the state or country under which it professes to be organized. It is evident that the Act refers only to companies organized under the laws of another state or a company organized under the laws of a foreign country, and does not apply to any corporation or agency of the United States.

Furthermore, as pointed out in Lawn's brief, if the orders appealed from should be reversed, Federal could have another sale under its collateral note and the bene-

ficial interest could be sold. Lawn could then file an ejectment case and the lease would be ineffective. "No substantial purpose and no reasonable objective would be attained."

In that brief it is further pointed out that the only value the beneficial interest of the mortgagor trust could possibly have is to effect a redemption from the foreclosure sale, and this is no longer possible, because the redemption period has expired. "Courts of review will not reverse judgments of decree or orders where no purpose appears or can be shown." Barnard v. Michael, 392 Ill 130, 63 NE2d 858; Gliwa v. Washington Polish Loan & Building Ass'n, 310 Ill App 465, 34 NE 2d 736.

The trial court properly dismissed the cause of action, and the order entered in the trial court dismissing the cause of action is affirmed.

The decree and the orders entered in the Circuit Court of Cook County in Lawn Savings and Loan Ass'n v. Howard B. Quinn, La Salle National Bank, as trustee under trust 28563, et al. (our court No. 50,419), and the order entered in the case of Howard B. Quinn and Charlotte J. Quinn v. Lawn Savings & Loan Ass'n, La Salle National Bank, as trustee under trust 28563, and Federal Savings & Loan Insurance Corporation (our court No. 51,000), are affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.