KELLEY/LEHR AND ASSOCIATES, INC., Agent, Plaintiff-Appellant, v. TOM O'BRIEN et al., Defendants-Appellees.

Second District    No. 2—89—0564

Opinion filed February 23, 1990.

Richard W. Christoff, of Sanford Kahn, Ltd., of Chicago, for appellant.

John E. Waghorne, of John E. Waghorne & Associates, of Addison, for appellees.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Kelley/Lehr and Associates, Inc., the agent for Republic Savings and Loan Association of Wisconsin, which styles itself as a mortgagee in possession, appeals the judgment entered in favor of the defendants, Tom O'Brien and Cove Development (Cove). Plaintiff brought an action in forcible entry and detainer against defendants, who were occupying the premises of suite 134 of the Roselle Station

Shopping Center pursuant to an alleged lease granted by Roselle Station Partners, Ltd. (Roselle), the mortgagor and landlord. Plaintiff raises two issues on appeal: first, that the trial court's finding that a lease existed was against the manifest weight of the evidence, and second, that any agreement between the Roselle mortgagor and the tenant regarding offsets against rental payments was not binding on plaintiff as the assignee of Roselle.

At the trial on the action for forcible entry and detainer, plaintiff testified that it had taken possession as agent for Republic. Republic claimed possession under an "agreement for voluntary possession." This agreement was admitted into evidence and contained certain provisions as follows:

"WHEREAS, Republic holds a Promissory Note ('Note') dated October 29, 1985 on the Property made by the Borrowers [(Roselle)] which Note is secured by a Multifamily Mortgage ('Mortgage') dated October 29, 1985, and recorded in the Real Estate records for Du Page County on October 31, 1985, as document number R85—95124;

WHEREAS, the Mortgage contains a provision for the Assignment of Rents in favor of Republic;

WHEREAS, Borrowers are and continue to be in default under the Note and Mortgage;

WHEREAS, in the event of a default by the Borrowers under the Note and Mortgage, Paragraph 26 of the Mortgage provides, among other things, that Republic 'may, in person, agent or by a court appointed receiver, regardless of the adequacy of Lender's (Republic's) security, enter upon and take and maintain full control of the Property ***.';

WHEREAS, the Borrowers and Republic all desire to reach an accommodation under which Republic will peacefully take control of the Property, collect rents and otherwise arrange for the management of the Property, without seeking a court-appointed Receiver.

* * *

Borrowers and Republic agree:

* * *

3. Collection of Rents. Effective with the Commencement Date, Republic shall have the right to collect all rental payments due and owing, whether in arrears or current, from all tenants of the Property. It is expressly understood by and between Republic and Borrowers that Republic shall not assume any obligations under any lease on the Property.

* * *

11. **Relationship Between the Parties.** Each of the Borrowers expressly acknowledge[s] and agree[s] that nothing herein shall be deemed, held or construed as creating a partnership, agency, relationship or joint venture between Republic and Borrowers or either of them in the ownership of the Property or in the conduct of business on or at the Property, nor as rendering Republic liable for any debts, liabilities or obligations incurred by any of the Borrowers or either of them. It is expressly understood and agreed by and between the Borrowers and Republic that by executing this Agreement, Republic is not agreeing to assume or be bound by any lease, contractual obligation, or any other agreement of Borrowers with respect to the Property. Furthermore, Borrowers expressly agree that Republic is not and will not be acting in any fiduciary or trustee capacity to Borrowers or either of them under the terms of this Agreement.''

The mortgage itself was not offered into evidence. The voluntary agreement was executed on December 8, 1988, and gave Republic control commencing January 1, 1989. On December 15, 1988, Roselle sent letters notifying all tenants that Republic was in control of the premises. Plaintiff demanded rent from defendants for the months of January and February 1989, but the defendants refused. Plaintiff served a five-day notice of termination of the lease. When defendants still refused to pay rent, plaintiff filed a complaint in forcible entry and detainer, praying for possession and the sum of $2,190, being rent for January, February and March.

At the trial, plaintiff testified that it could not locate any executed lease with defendants in its records. The plaintiff did produce plaintiff's exhibit No. 1, which was an unexecuted copy of a lease. It was a standard office lease between Roselle as landlord and defendant Cove as tenant, with a term of 24 months from September 1, 1986, to August 31, 1988, and monthly rent of $662.29. Attached was an inflation-adjustment rider and a rider granting defendant an option to renew for two one-year periods.

Also at the trial, defendants called Pamela Mack, a partner of Roselle, as a witness. She stated that defendant Cove had been renting under a lease when Roselle took possession in March 1985. The lease was amended in September 1985, when Cove reduced its occupied space and the corresponding rent fell from $1,672 per month to $662.29 per month. She testified that defendant's month-to-month lease was converted to a lease almost identical to plaintiff's exhibit

No. 1. She prepared plaintiff's exhibit No. 1 in 1986, but it was not executed because the amount of the rent was then up to $700 per month. She prepared a lease identical to plaintiff's exhibit No. 1 with the correct amount included, and she and defendant executed it. However, because Roselle was no longer in possession of its files at the time of the trial, she was unable to produce the executed lease.

Mack also produced a copy of the rent roll regarding Roselle's account with Cove. The rent roll showed that Cove was charged $1,672 per month from April 1985 to August 1985; $662.29 per month from September 1985 to August 1986; $700 per month from September 1986 to August 1987; and $730 per month from September 1987 to February 1988. No payments of rent were indicated on the rent roll, and the balance due increased every month by the amount of the monthly rental. The rent roll did show credits to defendant of $11,009.16 in January 1986, $11,636.03 on July 1, 1987, and $21,089.56 in February 1988. The first two credits reduced the outstanding balance on those dates to exactly zero. Mack testified that these credits were given for invoices that defendants produced from time to time. Defendants would perform jobs for Roselle, which included taking care of repairs to the various units of the shopping center, cleaning the exterior, patching the cement, taking down trees, removing a parking island to increase the capacity of the parking lot, cleaning rotten timbers, and most recently rodding out the sewers after a backup of the sewers. Mack had contacted the defendants at least two or three times a week in the course of her duties. Defendants had originally built and owned the shopping center. Although the rent roll had not been updated with charges for accruing rent since February 1988, Mack testified that the current outstanding balance of credits due defendants was approximately $11,000, after accruing rent had been deducted. Mack testified that defendants had exercised their options to renew the lease orally but not in writing. Tim O'Brien, a principal of Cove with Tom O'Brien, also testified that he had executed the lease described by Pamela Mack, but that she had taken the only original copy of it and never gave him a copy.

The trial court determined that the defendant had "prepaid rent" of $21,000 and entered judgment in favor of defendants. Plaintiff appeals.

■■ ■ Plaintiff's first argument is that the trial court's finding that there existed a lease which provided that rent may be offset by the cost of services performed by the tenant is against the manifest weight of the evidence. We believe that the wording of this issue mischaracterizes the findings of the trial court. The record reflects that

Roselle and defendant Cove entered into a definite, written lease which was identical to plaintiff's exhibit No. 1 except for the amount of the rent, which, as related by both the landlord and the tenant, and as corroborated by the landlord's records, was initially $700 per month. The lease contained the essential requirements of (1) the extent and bounds of the property, (2) a definite and agreed term, (3) a definite and agreed price of rental, and (4) the time and manner of payment. (*Feeley v. Michigan Avenue National Bank* (1986) 141 Ill. App. 3d 187, 191.) The record does not show, nor does defendant contend, that the lease included a "setoff" provision for services rendered. The "setoff" provision is outside the lease and not a term of the lease. However, the trial court's finding that a lease existed is not against the manifest weight of the evidence. *Kelley v. First State Bank* (1980), 81 Ill. App. 3d 402.

The second issue regarding the validity of the defense presented is a much thornier issue. The trial court determined that defendant paid prepaid rent to Roselle and thus had a valid defense. In Illinois, however, the defense that a tenant had paid rent in advance to a landlord mortgagor has never prevailed against the mortgagee where the mortgage was filed and of public record prior to the execution of a lease. A lessee had no right, as against a mortgagee, to possession of the premises and had to pay the mortgagee the reasonable value of the use and occupancy once the mortgagee or his receiver took possession, even if the lessee had already paid rent to the mortgagor in advance. (*Rohrer v. Deatherage* (1929), 336 Ill. 450, 454-56; *Lawn Savings & Loan Association v. Quinn* (1967), 81 Ill. App. 2d 304, 319-20; *Belleville Savings Bank v. Souris* (1932), 266 Ill. App. 565, 567.) A tenant under the mortgagor, who, having notice of the mortgage, paid rent in advance to the mortgagor did so at his peril, for if a receiver was appointed during the period for which the rental had been paid in advance, such tenant would be required to pay the same again. (*Greenebaum Sons Bank & Trust Co. v. Kingsbury* (1928), 248 Ill. App. 321, 333.) A tenant was considered to have constructive notice of a recorded encumbrance on the landlord's property. *De Kalb Bank v. Purdy* (1988), 166 Ill. App. 3d 709, 725.

This rule flowed naturally from the "title theory of mortgages," which held that the mortgagee held paramount title over a mortgagor. (See *In re Michigan Avenue National Bank* (Bankr. N.D. Ill. 1980), 2 Bankr. 171, 174-82.) A mortgagor had the right of possession, and, hence, the right to rents, until default only pursuant to the terms of the mortgage. Upon default in a condition of a mortgage, the mortgagee had the right to immediate possession and could eject the mortga-

gor or any person claiming an interest subsequent to the mortgagor. (*Rohrer*, 336 Ill. at 454-55.) Since the mortgagee already had title, there was no necessity of bringing suit in order to obtain possession, although the mortgagee could bring a suit to foreclose the mortgagor's equitable rights of redemption. (*Michigan Avenue National Bank*, 2 Bankr. at 178.) When a mortgagee took possession and entered the property, the lease was destroyed because neither the mortgagor nor the lessor had any right of possession. (*Kingsbury*, 248 Ill. App. at 332.) Since there is no privity of estate or privity of contract between a mortgagee and a lessee of the mortgagor, the mortgagee could treat the lessee as a trespasser and bring ejectment without notice to quit. (*Kingsbury*, 248 Ill. App. at 332.) As a consequence, a lessee's remedy was solely against the usually insolvent mortgagor to recover prepaid rent. A mortgagor could not execute a lease that would prevail against a mortgagee's superior rights, and a subsequent lease would have no force against a mortgagee. *Silverstein v. Schak* (1982), 107 Ill. App. 3d 641, 645-46.

However, where the mortgagor was rightfully in possession at the time of the execution of the lease, a tenant had priority over a subsequent mortgage (*Central Republic Trust Co. v. Petersen Furniture Co.* (1935), 279 Ill. App. 492, 504), so long as the lease had not been assigned to the mortgagee as additional security (*Metropolitan Life Insurance Co. v. W.T. Grant Co.* (1944), 321 Ill. App. 487, 501). Where a lessor obtains title under an instrument granting it full possession, and later assigns its rights back to the grantor upon a default in a contract, the grantor takes the property back subject to valid leases executed by the lessor, and tenants who paid rent in advance do not pay twice. (*Meyer v. Sachsel* (1908), 143 Ill. App. 563, 566.) The grantor became the assignee of the lessor and, as such, acquired only the rights of the assignor in the property. 143 Ill. App. at 566.

■ Although the above cases provide precedent regarding the issue before the court, we cannot follow them for the following reasons. The cases apply the rule that a mortgagee has paramount title and has the right of possession against all other interests subsequent to the execution of the mortgage. However, the State of Illinois has recently adopted the "lien theory of mortgages," and a mortgagee is not deemed to own the title of the property but only a mere lien. (*Harms v. Sprague* (1984), 105 Ill. 2d 215, 222-23.) The adoption of the lien theory of mortgages created a legal environment where many issues of mortgage law remained unresolved. (J. Gearen, J. Vranicar & E. Becker, *Into Harms' Way: Now That Harms v. Sprague Has Established the Lien Theory of Mortgages in Illinois, Does Foreclo-*

*sure Cut Off Junior Lease [sic] or Can a Mortgagee Elect to Preserve Them?* 34 De Paul L. Rev. 449 (1985).) According to the authors of *Harms' Way*, the question of whether a mortgage foreclosure cuts off the rights of junior lessees in Illinois has never been definitively decided, because a lease has been cut off upon a mortgagee's taking possession prior to foreclosure; however, now that a mortgagee is deemed to have only a lien and not title prior to foreclosure, Illinois courts would have the opportunity to determine the scope of the lessee's rights since the lease would not be cut off merely by the mortgagee's entry into possession. (J. Gearen, J. Vranicar & E. Becker, *Into Harms' Way: Now That Harms v. Sprague Has Established the Lien Theory of Mortgages in Illinois, Does Foreclosure Cut Off Junior Lease [sic] or Can a Mortgagee Elect to Preserve Them?*, 34 De Paul L. Rev. at 486 (1985).) Similarly, there has been no reported case in Illinois which deals with the possessory rights of a mortgagee whose interest is derived from a lien rather than a title. *Michigan Avenue National Bank*, 2 Bankr. at 182.

Therefore, it is appropriate to examine the law of other States to determine the status of a lessee to a mortgagee in a lien theory State. The general rule is that a mortgagee is bound by advance payments of rent made in good faith by the tenant to the mortgagor, and when the mortgagee's receiver takes possession after a default, he will find himself unable to collect any rents from the tenant. (R. Kratovil, Modern Mortgage Law & Practice (1972), citing *Ottman v. Tilbury* (1931) 204 Wis. 56, 58-59, 234 N.W. 325, 326.) The lessee is entitled to possession notwithstanding an assignment of rents by the mortgagor to the mortgagee as collateral security. (*Zimmerman v. Walgreen Co.* (1934), 215 Wis. 491, 501, 255 N.W. 534, 539.) Since the right to collect rents is an incident of possession, under the lien theory of mortgages, the mortgagee does not have any right to collect rent by virtue of its mortgage, which does not give it possession. A passive assignment of rents which becomes activated when the mortgagee does take possession is subsequent to the lessee's interest. Hence, under the lien theory of mortgages, a lease is not terminated by a mortgagee taking possession prior to foreclosure, and the mortgagee would be bound by the prepayment of rent by the tenant to a mortgagee. Thus, under the cases concerning the lien theory of mortgages, we determine that defendants could assert a valid defense to the plaintiff's request for rent.

In addition, recent statutory changes support this outcome. Although the action before the court was not brought under the Illinois Mortgage Foreclosure Law (Act) (Ill. Rev. Stat. 1987, ch. 110, par.

15—1101 *et seq.*), the Act defines the relationship between the parties. A mortgage is explicitly defined as being a lien upon the real estate. (Ill. Rev. Stat. 1987, ch. 110, pars. 15—1207, 15—1301.) A lessee's interest is not terminated even if joined as a party defendant to the foreclosure action unless specifically ordered by the court in the judgment of foreclosure. (Ill. Rev. Stat. 1987, ch. 110, par. 15—1501(d).) Title to the property does not pass until the court issues the deed after the expiration of all the mortgagor's redemption rights. Ill. Rev. Stat. 1987, ch. 110, par. 15—1509.

Most importantly, the Act defines the rights of the parties concerning possession prior to foreclosure. Possession is defined as "physical possession of the mortgaged real estate *to the same extent to which the mortgagor, absent the foreclosure, would have been entitled to physical possession.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 15—1701(a).) Thus, whoever takes possession can take only those rights that the mortgagor had. The Act also provides that a lease subordinate to a mortgage shall not be terminated during the pendency of a foreclosure solely by virtue of a mortgagee's entry into possession under the Act. (Ill. Rev. Stat. 1987, ch. 110, par. 15—1701(e).) Although plaintiff did not enter into possession in a proceeding under the Act, it would be inconsistent to apply any other rule. Although the Act does not address the issue of prepaid rent, it does provide the background to address the rights of the parties. Since the lease is not terminated when a mortgagee takes possession, both the tenant and the mortgagee are bound by its terms. The mortgagee accedes only into the shoes of the mortgagor; hence, if the mortgagor would be bound by a lease, the mortgagee in possession would also be bound.

This result is consistent with the traditional notions of property law. Under the statute of 32 Henry VIII, chapter 34 section 1, the grantees of any leased lands and the assignees of the lessor of any lease have the same remedies for the recovery of rent as their grantor or lessor had if the reversion had remained in such lessor grantor (Ill. Rev. Stat. 1987, ch. 110, par. 9—215), and the lessee has the same remedy against the lessor's grantees or assignees as such lessee might have had against his immediate lessor (Ill. Rev. Stat. 1987, ch. 110, par. 9—216; *Purvis v. Shuman* (1916), 273 Ill. 286, 289).

In the cause before the court, plaintiff brought an action for forcible entry and detainer based on the nonpayment of rent. A defendant may resist the action by raising the issue of whether excess rent has been paid (*Pole Realty Co. v. Sorrells* (1979), 78 Ill. App. 3d 361, 366),

or whether the tenant was entitled to credit for services rendered (*Quel v. Hansen* (1984), 126 Ill. App. 3d 1086). The right to file a counterclaim in a forcible entry and detainer action has been recognized where the subject matter is germane to the subject of possession. (*Bleck v. Cosgrove* (1961), 32 Ill. App. 2d 267, 272.) Even in the stricter world of commercial leases, the issue of the amount of rent is germane when the cause of action is based on nonpayment of rent. *Poulos v. Reda* (1987), 165 Ill. App. 3d 793, 799.

■ Thus, defendants were entitled to raise a defense in the forcible entry and detainer suit. Because plaintiff, the alleged mortgagee in possession, was only the assignee of the mortgagor/lessor Roselle, it had only Roselle's right to collect rent from defendants. Plaintiff argues that it is not liable for the debts of the mortgagor because it did not assume them when it signed the agreement for voluntary receivership. This argument confuses a counterclaim with a setoff. Plaintiff would not be liable for any claim the tenants may have against Roselle that may be raised as a counterclaim, but the tenant may set off to the extent of the amount claimed for rent but cannot have judgment for any amount that his damages may exceed the rent due. (*Selz v. Stafford* (1918), 284 Ill. 610, 618.) The obligor may assert a claim as a subtraction from an assignee's judgment, but may not obtain a judgment against the assignee for any excess over the assignee's claim, because the assignee has only the rights of the assignor against the obligor. The assignee takes the assignor's interest subject to all legal and equitable defenses existing at the time of the assignment. (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 123.) In other words, because the defendants had the right to subtract the amount of their services rendered from their obligation to pay rent to Roselle, they had the same right against Roselle's assignee. As defendants note, this is a rare case where the landlord owes more to the tenant, *i.e.*, the tenant is a creditor of the landlord.

Plaintiff also argues that because the right of setoff is outside the lease and does not run with the land, it is not bound by the setoff. This argument does not address plaintiff's capacity to sue for the rent. As we have discussed, Roselle did not grant title to plaintiff in the mortgage. In the voluntary agreement, Roselle did not convey the reversion after the lease, Roselle did not assign its interest in the lease, and plaintiff did not assume any lease. Roselle assigned only its right to collect rent, and plaintiff has made no showing of any other basis for its right to sue defendant. Under the facts of this case, plaintiff sues only under Roselle's right to collect rent and thus is subject to all defenses against Roselle's rights. It is still Roselle's build-

ing which is supplying the consideration for the payment of rent. (*Cf. Stafford Security Co. v. Kremer* (1931), 258 N.Y. 1, 179 N.E. 32.) We note, however, that contrary to plaintiff's argument, it is not bound to accept any future services from defendant.

Finally, we note that we have made this decision based on the policy espoused by the Illinois Supreme Court and the legislature. Mortgage lenders are interested in security for their loans. The value of a commercial property lies not so much in the physical building but the stream of rents produced by the building. Lenders may not be willing to lend funds for the acquisition or construction of buildings if the value of the collateral is impaired by tenants who occupy rentable premises without an obligation to pay rent to the lessor or the lessor's assignee. Lenders have several remedies to prevent abuse. Vendors and lessors must reveal any rent concession whereby a tenant has credit against rent accruing during the term of the lease to any prospective purchaser or lender taking real estate as security. (Ill. Rev. Stat. 1987, ch. 80, pars. 41 through 47.) Purchasers may bring an action for fraud where rent concessions are misrepresented. (*Kanter v. Ksander* (1931), 344 Ill. 408, 414.) The law of fraudulent conveyances can avoid the transfer of an interest in property for insufficient consideration. Courts protect tenants who have paid in advance in good faith. (*Ottman v. Tilbury* (1931), 204 Wis. 56, 234 N.W. 325; see also section 3—504 of the Uniform Land Transactions Act (13 U.L.A. 604 (1986), which is not enacted in Illinois, which also protects tenants who have made rental payments in advance in good faith.) Courts may not be sympathetic to tenants who make sweetheart deals with mortgagors on the eve of foreclosure. See *First National Bank v. Gordon* (1936), 287 Ill. App. 83.

We also note that plaintiff has not alleged that it had a separate agreement whereby the mortgagor/lessor agreed not to do any act which would impair the assignment of rents to the mortgagee. (See *D. Mitchell Investments, Inc. v. Spellman* (Fla. App. 1978), 364 So. 2d 805.) Although such an obligation not to impair may be implied (*Gordon*, 287 Ill. App. at 87; *Kingsbury*, 248 Ill. App. at 337), Roselle's failure to collect rent from defendants was not an impairment of its assignment of rents, but a recognition that no rent could be collected because of defendants' right of setoff, which in this case resulted from defendants' improvements to the mortgagee's collateral.

To summarize, we hold that defendants had a lease with Roselle which obligated it to pay rent. Defendants did not pay rent because they set off the amount Roselle owed them for services rendered. Roselle assigned its right to collect rent from all its tenants to plaintiff.

At the time of the assignment, defendants had a legal and equitable defense against the obligation to pay rent, and plaintiff took the right subject to that defense. Since the lease was not terminated when plaintiff took control of the property, the existing lease bound both parties, and plaintiff took only as the assignee of Roselle. Thus plaintiff took the rights of Roselle subject to defendants' right of setoff.

For the above reasons, we affirm the decision of the circuit court of Du Page County.

Affirmed.

McLAREN and REINHARD, JJ., concur.