Henry P. EARNEST, Jesse Earnest, Jr., Anita Earnest McCohn and Ida Earnest, Petitioners-Appellants,

v.

Leo LOWENTRITT, et al., Respondents-Appellees.

No. 82–3103
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1982.

Paul Henry Kidd, Monroe, La., for petitioners-appellants.

Hayes, Harkey, Smith & Cascio, Louis D. Smith, Bruce M. Mintz, Monroe, La., for Lowentritt, et al.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Petitioners appeal from the judgment of the district court dismissing their civil right claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) for failure to state a claim upon which relief can be granted. The court also dismissed their request for declaratory judgment pursuant to 28 U.S.C. § 2201 for lack of jurisdiction. Petitioners claim defendant violated their Fourteenth Amendment due process guarantees during the course of a procedurally defective Louisiana foreclosure action directed against their father's and husband's lands in 1940. On appeal, the plaintiffs contend that (1) their pleadings should be construed to allege a conspiracy between the state judge and the defendant sufficient to satisfy the state action requirement of § 1983 and (2) that the district court erred in finding that the acts of the defendant and his brother did not rise to the level of independently illegal acts required by § 1985(3). We find that there was no abuse of state power sufficient to characterize the defendant's use of Louisiana's executory process as having taken place "under color of" state law, and that there was no allegation or proof of a racial motivation underlying the defendant's deci-

sion to foreclose. Accordingly, plaintiff's § 1983 and § 1985(3) claims were properly dismissed. Finally, we agree with the district court that plaintiff's claim for injunctive relief has no independent stature, and thus must fall with the inapplicability of § 1983 and § 1985(3). The decision of the district court is affirmed.

## FACTS

In 1925 Ida Earnest and her late husband, Jesse Earnest, Sr. mortgaged approximately 850 acres of land in Franklin Parish, Louisiana to Louis Lowentritt, Sr. Lowentritt died in 1930, and his sons, Leo and Louis Lowentritt, Jr. (now deceased) had the mortgage reinscribed in 1933. In 1940, the two sons instituted executory foreclosure proceedings against Jesse Earnest. The mortgaged property was sold at sheriff's sale, and the Lowentritts purchased the property for themselves. In 1981, the appellants, Ida Earnest and her children, brought this class action in the U. S. District Court for the Western District of Louisiana, claiming that the Lowetritt brothers had deprived Jesse Earnest of property without due process of law through the allegedly defective foreclosure proceeding. They claim that the promissory notes evidencing the debt had prescribed [1] and that the Lowentritt brothers offered no proof that they owned the notes, either through inheritance or power of executor. In addition, appellants sought to have the Louisiana statute governing executory process and prescription declared unconstitutional as applied to poor black people in Louisiana who were unable to obtain financial or legal assistance to challenge similar past foreclosure actions. The district court dismissed all three claims, finding that there was no requisite state action to support the § 1983 claim, that there was no independently illegal act to support the conspiracy claim under § 1985(3), and subsequently, that there

was no jurisdiction over the request for a declaratory judgment. The Earnests appeal these findings.

### I. § 1983

Section 1983 does not reach all constitutional injuries, but only those caused by persons acting "under color of state law." 42 U.S.C. § 1983; *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). To act under color of state law for § 1983 purposes does not require, however, that the defendant be an officer of the state. Private acts or conduct may incur liability under § 1983 if the individual is a "willful participant in joint action with the State or its agents." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), *quoting United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). Of course, the requisite "joint participation" envisioned in *Adickes* goes beyond the mere use of the state court system by private litigants in the course of an ordinary lawsuit. As stated by this Court in *Hollis v. Itawamba County Loans,* 657 F.2d 746 (5th Cir. 1981), "no state action is involved when the state merely opens its tribunals to private litigants." *Id.* at 749. Within the context of individual dispute resolution, a private party acts under color of state law only when there is corruption of judicial power by the private litigant. In *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), for example, the state court litigants bribed the judge and obtained an injunction which deprived their adversary of property. The private individuals were considered to have acted under color of state law for § 1983 purposes, regardless of the judge's immunity or liability.[2]

---

1. In Louisiana, prescription is defined as a manner of acquiring the ownership of property, or discharging debts, by the effect of time. The prescription by which debts are released is a bar to both personal and real actions resulting from the creditor's failure to pursue his claim during the time fixed by law.

2. The immunity of the judge in these circumstances is dependent on whether the challenged conduct is considered an official judicial act within his statutory jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In any case, however, his liability is irrelevant to the question of the liability of the private individuals under § 1983.

In their initial pleadings, the Earnests alleged only that they were denied equal protection by the Lowentritts "when they instituted the executory proceedings . . . against Jesse Earnest." There is no mention that the Lowentritts acted in concert with any state officials, merely that they "acted under color of state law in litigating such proceedings and acquiring the 850 acres by sheriff's sale." On appeal, the Earnests ask that these pleadings be construed as having alleged a conspiracy between the Lowentritts and the state judge who issued the execution order. This construction will aid them little. The allegedly defective foreclosure proceedings occurred forty-two years ago. The record is unclear as to whether the state judge is still living. Attempts to prove elements of fraudulent behavior at this date would be highly speculative. Even if this Court did read the complaint as alleging illegal joint action between the judge and the defendants, the record is totally devoid of any facts at all to support a finding that the state judge was improperly or maliciously involved in the foreclosure. Any assertion of illegal motive on the part of the judge is purely conclusory, unsupported by any pleaded facts.

The Earnests also allege that the Lowentritts acted under color of state law in undertaking the foreclosure action and in acquiring the 850 acres by sheriff's sale. The Supreme Court has characterized the private use of state legal procedures for purposes of the Fourteenth Amendment[3] as attributable to the state only in situations where the state has created a system which allows state officials to attach property on *ex parte* application. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (state created garnishment procedure); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (execution of a vendor's lien to secure disputed property); *North Georgia Finishing, Inc. v. DiChem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (stated created garnishment procedures); *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), (state replevin statute). A recent decision of this Court is illustrative. In *Hollis v. Itawamba County Loans, supra,* an automobile buyer who claimed that his car was seized from him by an abuse of the state replevin proceedings was held to have stated a presumptively valid § 1983 claim for damages through improper use of state power. 657 F.2d at 750. In *Hollis,* unlike the situation in the present case, the creditor was acting pursuant to a state statute which permitted pre-judgment seizure of property without benefit of a hearing. It is in these *ex parte, prejudgment* situations that the courts have found the state is itself participating in the deprivation of property, and the constitutional requirements of due process apply. Private misuse of a state statute alone does not describe conduct that can be attributed to the state. It is the procedural scheme created by the statute that is state action, and therefore subject to constitutional restraints. *Lugar v. Edmondson Oil Co., supra.* The absence of a full adversary adjudication prior to seizure triggers the constitutional due process issue since state officers typically act jointly with a private creditor in securing the property in dispute.

Initiation of foreclosure proceedings pursuant to a mortgage implicates no similar "authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). Unlike the situation involving pre-adjudicative seizures, the execution order permitting the sheriff to sell the Earnest property was obtained only after notice to the debtor and the opportunity to be heard concerning the merits of the seizure. There is no evidence in the pleadings that Jesse Earnest, Sr. was not served with a complaint describing the impending action for foreclosure of the

---

**3.** If the challenged conduct would support a finding of state action on federal due process grounds, that conduct will also be sufficient action "under color of state law" to support a suit under § 1983. *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

mortgage. In the absence of any evidence that he was denied the opportunity to contest the seizure and sale of his property, the Earnests cannot characterize the process as *ex parte.* Any other conclusion would transform every foreclosure action between private parties into state action of constitutional dimensions.

Thus, it is not enough that the Lowentritts utilized state court procedures to satisfy a debt owed by Jesse Earnest. Nor can the State of Louisiana be said to have compelled the defendant to bring the foreclosure action. The fact that Louisiana permitted the foreclosure and subsequent sale of the Earnest land as the execution of a judgment obtained in the private adversary proceeding is not sufficient to raise the issue of state action. The Lowentritt foreclosure on the mortgage given to him by Jesse Earnest was a purely private dispute, immune from the coverage of § 1983 lacking a showing of further state involvement.

## II. 42 U.S.C. § 1985(3)

■ The Earnests also appeal the district court's dismissal of their 42 U.S.C. § 1985 claim. The district court found the Earnests had failed to allege the requisite independent illegal conspiratorial acts to support that cause of action. The court held that the actions of the Lowentritt brothers which resulted in depriving Jesse Earnest, Sr. of his real property, even if true, did not constitute a conspiracy within the meaning of the statute. We find that, even assuming the acts of the Lowentritt brothers may have been sufficient illegal acts for purposes of 42 U.S.C. § 1985(3), the failure to allege or prove any racially-based animus underlying the conspiracy mandates the dismissal of the action.

■ In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court set out the elements of § 1985(3). To state a successful cause of action under the statute, there must have been a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws, and there must have

been an action in furtherance of that conspiracy by which the person or class was injured or deprived of exercising any right or privilege of a citizen of the United States. *Id.* at 102–03, 91 S.Ct. at 1798–99. Because the statute can afford a remedy for purely private conspiracies to deprive a person of equal protection of the laws, the Court in *Griffin* stressed its concern over the statute's potentially broad sweep. "That the Statute was meant to reach private activity does not . . . mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101, 91 S.Ct. at 1798. To keep the limits of 1985(3) within the scope intended by Congress,[4] courts have required that the act in furtherance of the conspiracy be independently illegal and that the conspirators' actions be motivated by a class or racially-based animus. *See McLellan v. Mississippi Power and Light Co.,* 545 F.2d 919 (5th Cir. 1977); *Scott v. Moore,* 640 F.2d 708 (5th Cir. 1981), *rehearing en banc,* 680 F.2d 979 (5th Cir. 1982). With these elements in mind, we now turn to analysis of the appellants' claims.

There can only be a deprivation of the rights of a person if the actions of the individual defendants are otherwise illegal. The Earnests argue that the blatant failures of the Lowentritt brothers to comply with state law in reinscribing the notes and in initiating executory process described in their pleadings do constitute sufficient independent illegal acts to satisfy § 1985(3). Taking the allegations in their complaint to be true, it is arguable that the Lowentritt brothers did not own the seven notes sued upon and that they did not prove what amount, if any, was overdue. If the object of their plan were to foreclose fraudulently on another's property, the actions of the brothers could have constituted a violation of the civil laws of Louisiana. We do not have to resolve this question here, however. The existence of an independent illegal act is a necessary, but not solely sufficient element of a 1985(3) claim. Once this compo-

---

4. Section 1985(3) was originally enacted by Congress as part of the Ku Klux Klan Act to provide redress for persons victimized by the Klan's acts of terror and violence.

nent is satisfied, *Griffin* requires that the inquiry shift to whether such conduct was motivated by a racially or class based bias. 403 U.S. at 101–02, 91 S.Ct. at 1797–98. "The language requiring intent to deprive of *equal* protection of *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798 (emphasis in original).

Thus, even if the acts of the Lowentritt brothers were considered to have risen to the level of independent illegal actions, a prima facie case under § 1985(3) will still fail in the absence of ascribing to the Lowentritts any racially-based motive. Racial factors are alleged in the complaint in several places. The complaint states that the Earnests were unable, as poor black people in Louisiana, to obtain legal or financial counsel when faced with the 1940 execution proceedings. Although assertions of such racist attitudes and inequities in 1940 may well be grounded in fact, it remains true that such discrimination relates only to the Earnests' problems *subsequent* to any conspiracy or acts of the brothers. Assuming the Lowentritts acted improperly, there is nothing in this record to indicate that they were motivated in any way other than by the obvious human incentive of monetary greed. Because there is no allegation nor showing of racially-based animus, the complaint must be dismissed.

### III. 28 U.S.C. § 2201

The Earnests finally urge that this Court reverse the district court's dismissal of their prayer for declaratory relief pursuant to 28 U.S.C. § 2201. Although appellants make lengthy argument in opposition to the district court's reasoning with respect to its dismissal, we do not need to reach these arguments here. Section 2201 does not provide an independent cause of action for determination of the constitutionality of a statute, but rather is only an avenue for relief in a "case of actual controversy within (the court's) jurisdiction." 28 U.S.C. § 2201. Because federal jurisdiction is lacking under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), the only issue remaining before this Court involves the applicability of the Louisiana prescriptive statute. This is an issue of state rather than federal law. Thus, the request for declaratory relief is tied to no other cause of action within the jurisdiction of the federal court and must be dismissed. *Delavigne v. Delavigne,* 530 F.2d 598 (4th Cir. 1976).

AFFIRMED.