**William SCOTT and Rosemary Scott, Plaintiffs,**

v.

**James E. O'GRADY, Sheriff of Cook County, et al., Defendants.**

No. 90 C 5810.

United States District Court, N.D. Illinois, E.D.

Feb. 26, 1991.

Lewis Check, Loyola University Community Law Center, Chicago, Ill., for plaintiffs.

Douglas B. Swill, Asst. State's Atty., Chicago, Ill., for defendants Sheriff O'Grady and Deputy Sheriff Branch.

David Letvin, Letvin and Stein, Chicago, Ill., for defendant Diamond Mortg. Corp.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this action brought pursuant to 42 U.S.C. § 1983, plaintiffs William and Rosemary Scott ("the Scotts") sue Cook County Sheriff James O'Grady; Deputy Sheriff Kelvin Branch; Diamond Mortgage Corp. of Illinois d/b/a Diamond Financial Services of Illinois, Inc. ("Diamond"); and Commerce Mortgage Corp. d/b/a Tracy Mortgage Corp. ("Commerce") (collectively, "defendants"). The Scotts claim that defendants violated their constitutional right to due process when defendants evicted the Scotts from the Scotts' rented residence pursuant to a writ of assistance issued by the Circuit Court of Cook County. Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

■ On a motion to dismiss, the court accepts as true all the well-pleaded factual allegations of the complaint and views those allegations in the light most favorable to the plaintiff. *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). On February 24, 1986, Commerce filed a mortgage foreclosure action in the Circuit Court of Cook County, Illinois concerning property located at 449 West 61st Street in Chicago ("the property"). Complaint ¶ 8. On August 22, 1986, Commerce assigned its mortgage interest in the property to Diamond. *Id.* ¶ 9. On October 31, 1987, the mortgagor of the property, Larry Holder, entered into a lease agreement with plaintiff William Scott. *Id.* ¶ 10. Under the agreement, Scott rented the first floor and basement apartment units of the property for a two-year period beginning November 4, 1987. *Id.* At the time Scott executed the lease agreement, Holder failed to inform Scott of the pending foreclosure action concerning the property. *Id.* ¶ 12.

On November 10, 1987, the state court entered judgment for foreclosure and sale in favor of Commerce and against Holder and the property. *Id.* ¶ 13. On January 5, 1988, Commerce purchased the property at a sheriff's sale. *Id.* ¶ 14. The sale was approved by the Circuit Court of Cook County on January 19, 1988. *Id.*

The Scotts moved into their rented units at the property in March 1988. *Id.* ¶ 15. At that time, the Scotts remained unaware of the foreclosure and sale of the property; they continued to pay Holder monthly rent under the lease agreement. *Id.* On July 20, 1988, Commerce received a sheriff's deed to the property. *Id.* ¶ 16. On August 23, 1988, Commerce moved for and received from the Cook County Circuit Court a writ of assistance directing the Sheriff of Cook County to accompany Commerce to the property and assist Commerce in obtaining possession of the property. *Id.* ¶ 17. The writ of assistance authorized the sheriff to use any and all force required in securing Commerce's possession of the property. *Id.* The Scotts claim that Commerce and/or Diamond knew or should have known that the Scotts were tenants in possession of the property, and that the Scotts had not been named as parties to the foreclosure action. *Id.* ¶¶ 18–19. Nevertheless, the Scotts did not receive notice of the motion for a writ of assistance. *Id.* ¶ 20. Nor were the Scotts named in the writ of assistance. *Id.* In addition, in applying for the writ of assistance, Commerce did not inform the Cook County Circuit Court that the Scotts were living at the property. *Id.* ¶ 21.

After receiving the writ of assistance, Commerce gave it to the Cook County Sheriff's Department without informing the Scotts of the writ's existence. *Id.* ¶¶ 22–23. On October 11, 1988, Commerce and/or Diamond arrived at the property with Deputy Sheriff Branch and other employees of the Sheriff's Department. *Id.* 27. Scott informed defendants that he had not been served with any written notice of a court proceeding affecting his tenancy. *Id.* ¶ 28. Commerce and/or Diamond then directed Deputy Sheriff Branch to immediately and forcibly evict the Scotts and their belongings from the property pursuant to the writ of assistance. *Id.* ¶ 29. Many of the Scotts' personal belongings were damaged or lost when the sheriff's agents de-

posited their personal property in the street. *Id.* ¶¶ 29, 31. The Scotts claim that defendants' forcible eviction deprived them of their property without due process of law.

## DISCUSSION

Generally, the federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988). In determining the sufficiency of the complaint, the court must construe pleadings liberally; vagueness or lack of detail are insufficient grounds for dismissal. Fed.R. Civ.P. 8; *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). However, the court need not ignore facts set forth in the complaint that undermine the plaintiffs' claim, nor is the court required to accept the plaintiffs' legal conclusions. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 724 (7th Cir.1986). Dismissal is proper if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to the relief requested. *Illinois Health Care Ass'n v. Illinois Dep't of Public Health*, 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The defendant bears the burden of establishing the legal insufficiency of the complaint. *Yeksigian v. Nappi*, 900 F.2d 101, 104–05 (7th Cir.1990).

### I. Sheriff O'Grady and Deputy Sheriff Branch's Motion to Dismiss

Sheriff O'Grady and Deputy Sheriff Branch assert several grounds for dismissal under Fed.R.Civ.P. 12(b)(6). The court addresses each theory separately.

#### A. *Immunity*

O'Grady and Branch contend that they are immune from the Scotts' civil rights action for damages under the doctrine of public official immunity. O'Grady and Branch argue that they are entitled to quasi-judicial absolute immunity or, in the alternative, qualified immunity. However, the immunity defenses asserted by O'Grady and Branch apply only to government officials sued in their personal or individual capacities. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237–38 (7th Cir. 1986). The complaint clearly alleges that O'Grady and Branch are sued in their official capacities as government officials. Complaint ¶¶ 4–5. Because official capacity suits are treated as suits against the governmental entity, "[a]ny damage award may be satisfied by looking only to the entity itself, not the official, and *the official may not assert any personal immunity defenses.*" *Henry*, 808 F.2d at 1238 (emphasis added), citing *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). Accordingly, O'Grady and Branch are not entitled to either absolute or qualified immunity.

#### B. *Eleventh Amendment*

O'Grady and Branch argue that the Scotts' action is prohibited by the eleventh amendment. The eleventh amendment bars federal courts from exercising jurisdiction over actions brought by private citizens against a state, its agencies or its officials. *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir.1990), citing *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). An action against a municipality or county or its officials is not precluded by the eleventh amendment. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Yeksigian v. Nappi*, 900 F.2d 101, 103–04 (7th Cir. 1990).

O'Grady and Branch argue that although technically they are county officers, they were effectively acting on behalf of the state of Illinois when they took action pursuant to a writ of assistance issued by a state court. Thus, they claim that the eleventh amendment precludes a suit against them in their official capacity as officers for the state. In support of their position, O'Grady and Branch cite *Shipley v. First Fed. Sav. and Loan Ass'n of Delaware*, 619 F.Supp. 421 (D.Del.1985). The *Shipley* court determined that a county sheriff and prothonotary acted in a ministerial capacity for the state of Delaware in connection

with mortgage foreclosure proceedings. *Id.* at 435. Thus, the *Shipley* court held that the eleventh amendment barred an official-capacity suit for damages against these officers in connection with their conduct during mortgage foreclosure proceedings. *Id.*

 For the purpose of determining liability under section 1983, it is a question of state law whether a county sheriff may be considered an officer of the state. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986); *Soderbeck v. Burnett County,* 821 F.2d 446, 451 (7th Cir.1987). The Scotts argue that the *Shipley* decision was based on Delaware law and does not apply to this case. The *Shipley* holding was premised on the court's determination that Delaware law treated the sheriff and prothonotary as state officials in connection with their actions in mortgage foreclosure proceedings. *Id.* Indeed, Delaware statutes specifically directed the sheriff and prothonotary to perform certain duties in connection with mortgage foreclosure proceedings. *Id.* The Scotts point out that under Illinois law, the sheriff is a county officer whose common law and statutory duties are intended to benefit the county as a whole. *Holda v. Kane County,* 88 Ill. App.3d 522, 43 Ill.Dec. 552, 559, 410 N.E.2d 552, 559 (1980). Further, the Illinois Supreme Court has long held that the sheriff is an officer of the county. *People ex rel. Davis v. Nellis,* 249 Ill. 12, 23, 94 N.E. 165, 169 (1911).

O'Grady and Branch argue that the Illinois Mortgage Foreclosure Law, Ill.Ann. Stat. ch. 110, para. 15–1101 *et seq.* (Smith–Hurd Supp.1990), specifically directs the sheriff to act as an arm of the Illinois state judicial system. The Mortgage Foreclosure Law authorizes Illinois circuit courts to issue orders enforcing judgments made pursuant to that statute. *Id.* § 15–1102. In addition, under § 15–1507, the sheriff is authorized to conduct a judicial sale upon entry of judgment of foreclosure. O'Grady and Branch offer these statutory provisions as examples of the

sheriff's involvement (in a ministerial capacity) with state mortgage foreclosure proceedings. In the present case, after entering judgment of foreclosure, the Circuit Court of Cook County issued a writ of assistance ordering the sheriff of Cook County to accompany Commerce to the property and to use all means necessary to insure Commerce's ability to take possession of the property. The sheriff and his agents were given no discretion in enforcing the writ; they acted solely in a ministerial capacity in carrying out the state court's order. Under these circumstances, the actions of the sheriff and deputy sheriff cannot fairly be considered to be county actions for which section 1983 liability is permitted. Sheriff O'Grady and Deputy Sheriff Branch must be deemed state officials for the purposes of eleventh amendment immunity. *See Shipley,* 619 F.Supp. at 434–35. *See also Echols v. Parker,* 909 F.2d 795, 801 (5th Cir.1990) ("county official pursues his duties as a state agent when he is enforcing state law or policy"); *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980) (county judge implementing unconstitutional state law acted as a state official). Accordingly, the eleventh amendment precludes the Scotts' section 1983 action against Sheriff O'Grady and Deputy Sheriff Branch in their official capacities.

The court's determination that O'Grady and Branch are not subject to suit in federal court renders consideration of O'Grady and Branch's additional reasons for dismissal unnecessary.

## II. Diamond's Motion to Dismiss

Diamond[1] attacks the sufficiency of the Scotts' section 1983 action on several grounds. First, Diamond contends that the complaint fails to allege the essential elements of a section 1983 claim. Second, Diamond claims that state law provides an adequate post-deprivation procedure to remedy any alleged wrong the Scotts suffered. Third, Diamond argues that it is

---

1. For purposes of the motion to dismiss, Diamond assumes that all conduct alleged to have been taken by Commerce is properly attributa-

ble to Diamond. *See* Diamond's memorandum in support of motion to dismiss at 1 n. 1.

entitled to qualified immunity based on the state of mind allegations in the complaint.

A. *Elements of a Section 1983 Claim*

In order to state a claim under section 1983, the complaint must allege that (1) "the conduct complained of was committed by a person acting under color of state law;" and (2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir.1990), quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Diamond claims that the Scotts have failed to allege either of these two elements.

1. *State Action*

■ A defendant acts under color of state law if the defendant's conduct is "fairly attributable" to the state. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). A defendant's action is fairly attributable to the state if the defendant acts pursuant to a state rule or policy, *and* if the defendant is in some way a state actor. *Id.* Diamond does not dispute that it followed Illinois statutory procedures in securing the writ of assistance and evicting the Scotts. Therefore, the first prong of the state action test—the requirement that a defendant act pursuant to a state rule—is satisfied. However, Diamond argues that its conduct in securing and enforcing the writ of assistance without giving notice to the Scotts does not constitute state action because Diamond was not a state actor.

Private persons are considered state actors when they exercise powers "traditionally the exclusive prerogative of the State." *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), quoting *Blum v. Yaretsky*, 457 U.S. 991, 1005, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). In

the context of property attachment, the Supreme Court has determined that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor.'" *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756. In *Lugar*, the defendant invoked Virginia's prejudgment attachment statute to attach the plaintiff's property. Under the Virginia statute, a creditor could attach a debtor's property prior to obtaining a default judgment by filing an *ex parte* petition for a writ of attachment, which was then issued by a state court clerk and executed by a county sheriff. *Id.* at 924–25, 102 S.Ct. at 2747. In finding that the creditor was a state actor, the *Lugar* Court explained:

> The Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state-created attachment procedures ... Whatever may be true in other contexts, this is sufficient when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute.

*Id.* at 942, 102 S.Ct. at 2756.

■ The Scotts urge the court to apply the *Lugar* reasoning to Diamond's actions in obtaining a postjudgment writ of attachment and invoking the authority of the county sheriff to execute the writ and evict the Scotts without notice.[2] Diamond correctly points out that the *Lugar* Court intended to limit the application of its lenient standard for joint participation between a private party and the state to the context of *ex parte* prejudgment attachment proceedings. *Id.* at 939 n. 21, 102 S.Ct. at 2755 n. 21 ("[t]he holding today ... is limited to the particular context of prejudgment attachment"). Diamond argues that the *Lugar* holding should not be applied to the

---

**2.** Diamond erroneously claims that the complaint charges Diamond with misusing the statutory procedure for obtaining a writ of assistance. Private misuse of a state statute does not amount to state action. *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755. However, the complaint does

not allege that Diamond misused the writ process. Instead, the complaint avers that Diamond acted pursuant to the writ of assistance in directing the deputy sheriff to forcibly evict the Scotts. Complaint ¶ 29.

Scotts' alleged postjudgment deprivation of property. The Scotts, on the other hand, assert that the *Lugar* rationale has not been limited to prejudgment deprivations. The Scotts rely on four cases to support their contention that a private party is properly considered a state actor when it uses state-sanctioned postjudgment procedures to deprive a person of property: *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1146 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Davis Oil Co. v. Mills*, 873 F.2d 774 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544 (5th Cir.1988); and *Dieffenbach v. Attorney General of Vermont*, 604 F.2d 187 (2d Cir.1979).

In *Pennzoil*, a Texas state court jury returned a verdict against Texaco for tortiously interfering with Pennzoil's contract with a third party. Before the state trial court entered judgment, Texaco filed a section 1983 action in federal court alleging, *inter alia*, that the Texas procedures for securing a postjudgment lien on Texaco's assets violated due process and equal protection. The district court, concluding that Texaco's federal claims were likely to succeed, enjoined Pennzoil from taking any action to enforce the judgment until resolution of the section 1983 action. The court of appeals affirmed, holding that in securing a lien on Texaco's property to enforce the state court judgment, Pennzoil would be a state actor, and thus Texaco had stated a claim under § 1983. *See id.*, 784 F.2d at 11445–46 ("Pennzoil would have to act jointly with state officials to attach and seize Texaco's assets ... [e]nforcement of the state court judgment therefore necessarily involves a panoply of activities undertaken together by Pennzoil and state officials, which constitutes joint action for the purposes of § 1983"). The Supreme Court reversed the decision of the court of appeals on abstention grounds. *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 17, 107 S.Ct.

1519, 1529, 95 L.Ed.2d 1 (1987). The majority opinion did not reach the issue of whether Pennzoil's use of a state's postjudgment attachment procedure constitutes state action. However, four concurring justices (Brennan, Marshall, Blackmun and Stevens) agreed that under *Lugar*, Pennzoil would indeed be considered a state actor. *See id.* at 19, 107 S.Ct. at 1530 (Brennan, J., concurring) ("creditor's invocation of a State's postjudgment collection procedures constitutes action under color of state law within the meaning of 42 U.S.C. § 1983"). *Accord,* 481 U.S. at 27 & 30 n. 1, 107 S.Ct. at 1534 & 1536 n. 1. Because the Supreme Court based its reversal on abstention grounds, the Second Circuit's ruling on state action in *Pennzoil* remains in force.

The *Davis Oil* case also supports the Scott's claim that a private person's use of state postjudgment procedures to seize property may be considered state action. In *Davis Oil*, the complaint alleged that Louisiana's mortgage foreclosure procedure was unconstitutional because it allowed a mortgagee to obtain foreclosure and execution of the judgment of foreclosure without providing adequate notice to other junior lien holders. Applying the *Lugar* reasoning, the *Davis Oil* court held that the mortgagee could be considered a "joint participant" with the state because the mortgagee set into motion the state-enforced procedures that would extinguish the junior lien holder's interest in the subject property. *Davis Oil*, 873 F.2d at 781. The court expressly stated that the question of whether a junior lien holder was entitled to notice was not relevant to the court's determination that the private party mortgagee was a state actor when it initiated and executed foreclosure proceedings that were *ex parte* with respect to the junior lien holder. *Id.* at 781 n. 11 ("[t]his question is more properly addressed by considering whether Davis in fact had a property interest protected by the fourteenth amendment, rather than subsuming the question in the state action inquiry").[3]

3. Because the junior lien holder did not receive notice of the foreclosure proceedings and execution of the judgment, *Davis Oil* is distinguish-

able from the case relied upon by Diamond, *Earnest v. Lowentritt*, 690 F.2d 1198 (5th Cir. 1982). The *Earnest* court held that the "[i]nitia-

The *Davis Oil* and *Pennzoil* cases indicate that *Lugar* has indeed been extended to cases in which a private party uses *ex parte* state procedures for property seizure.[4] The Scotts allege that after obtaining judgment of foreclosure against the mortgagor (Larry Holder), Diamond used Illinois statutory procedure to obtain a writ of assistance to enforce the judgment. Diamond then directed the sheriff's office to execute the writ of assistance by forcibly evicting the Scotts from the property they rented from Holder. Further, although Diamond may have notified Holder of the foreclosure proceedings and application for a writ of assistance, the Scotts allegedly did not receive notice. Under *Lugar, Davis Oil,* and *Pennzoil,* the complaint sufficiently alleges that Diamond was a state actor.

### 2. *Protected Property Interest*

In order to maintain a section 1983 claim on due process grounds, the Scotts must allege that they had a "legitimate claim of entitlement" to the property from which they were evicted. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the United States Constitution; they are instead "defined by existing rules or understandings that stem from an independent source such as state law." *Id. See also New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1477 (7th Cir. 1990). Diamond apparently does not dispute the notion that the due process clause applies to residential tenants with valid

leasehold interests. *See Tavarez v. O'Malley,* 826 F.2d 671, 673–74 (7th Cir.1987).

The Scotts rented the basement and first floor units of the property from Holder on October 31, 1987, ten days prior to the entry of judgment of foreclosure on the property on November 10, 1987. Although mortgage foreclosure proceedings were initiated on February 24, 1986, Diamond did not obtain a sheriff's deed to the property until July 20, 1988. Complaint ¶ 16. Thus, under Illinois law, Diamond did not obtain possessory rights in the property until conveyance of the sheriff's deed to Diamond on July 20, 1988.[5] *See Newport Condominium Ass'n v. Talman Home Fed. Sav. and Loan Ass'n,* 188 Ill.App.3d 1054, 136 Ill.Dec. 612, 545 N.E.2d 136, 139 (1st Dist.1988) ("Illinois law has consistently held that title to land sold under a mortgage foreclosure remains in the mortgagor until the expiration of the redemption period and conveyance of the [sheriff's] deed to the purchaser of the sale") (citations omitted). Until Diamond received the sheriff's deed to the property, Holder had the right to lease the property to the Scotts and to collect rent. *See e.g. United States v. American Nat'l Bank & Trust Co.,* 573 F.Supp. 1319, 1321–22 (N.D.Ill.1983) (under Illinois law, mortgagor is entitled to rents collected from the mortgaged property until the mortgagee takes possession of the property), citing *Metropolitan Life Ins. Co. v. W.T. Grant Co.,* 321 Ill.App. 487, 53 N.E.2d 255 (1944). The Scotts therefore had a valid leasehold interest in the property until Diamond took possession pursuant to the writ of assistance. Accordingly, the Scotts had a legitimate entitlement protect-

---

tion of foreclosure proceedings pursuant to a mortgage implicates no ... authority of state law." *Id.* at 1201. However, in *Earnest,* the party challenging the mortgage foreclosure had received notice of the proceedings. Such was not the case in *Davis Oil;* nor is the present case factually similar to *Earnest.*

**4.** The other cases relied upon by the Scotts do not directly support their position. *Dieffenbach* was decided prior to the *Lugar* decision and therefore cannot support an extension of *Lugar* to postjudgment attachment procedures. In addition, although *Howard Gault* recognized the validity of the Second Circuit's state action hold-

ing in *Pennzoil, Howard Gault* did not involve a private person's attempt at enforcing a judgment through state procedures.

**5.** Effective in all foreclosure actions filed on or after July 1, 1987, possession may be obtained 30 days after confirmation of the foreclosure sale, "without notice to any party, further order of court, or resort to proceedings under any statute other than the Illinois Mortgage Foreclosure Law." Ill.Rev.Stat. ch. 110 para. 15–1701(d). This new provision does not apply to the present case because the foreclosure action was filed on February 24, 1986.

ed by the due process clause.[6]

Diamond argues that under Illinois law, the Scotts did not have a legitimate entitlement in possessing the property *as against Diamond,* because the Scotts signed their lease with Holder after the initiation of mortgage foreclosure proceedings and after Holder and all unknown owners and non-record claimants had been served with notice.[7] Diamond relies on several Illinois cases that apply the rule that a mortgagee has paramount title and has the right of possession against all other interests subsequent to the execution of the mortgage: *Kling v. Ghilarducci,* 3 Ill.2d 454, 459, 121 N.E.2d 752 (1954); *Reichert v. Bankson,* 199 Ill.App. 95 (1916); *Bartlett v. Hitchcock,* 10 Ill.App. 87 (1881). However, these cases do not undermine the Scotts' claim that they had a protectible property interest as lessees for the purposes of due process. The cases cited by Diamond were decided at a time when Illinois adhered to the "title theory of mortgages." As an Illinois appellate court explained, "the State of Illinois has recently adopted the 'lien theory of mortgages,' and a mortgagee is not deemed to own the title of the property but only a mere lien." *Kelley/Lehr & Assocs., Inc. v. O'Brien,* 194 Ill.App.3d 380, 141 Ill.Dec. 426, 430, 551 N.E.2d 419, 423 (2d Dist.1990), citing *Harms v. Sprague,* 105 Ill.2d 215, 222–23, 85 Ill.Dec. 331, 473 N.E.2d 930 (1984). Thus, the absolute supremacy of a mortgagee's right to possession may no longer apply in all circumstances. *Id.* In any event, even if the cases cited by Diamond governed the present case, the court is

unconvinced that the Scotts did not have any protectible interest. As mortgagee, Diamond may have had a superior claim to the property; that does not mean that the Scotts did not have *any* interest—albeit inferior—for which they might be entitled to notice before they were evicted.

Diamond claims that the Scotts were not entitled to notice or process because the Scotts entered into their lease with Holder after the mortgage was executed, after initiation of mortgage foreclosure proceedings, and after *lis pendens* notice was recorded. This argument does not address the issue whether the Scotts had a valid leasehold interest for the purposes of due process. Rather, the argument goes to the issue whether the Scotts received adequate notice before they were evicted from their rented apartment. The court cannot resolve this question on a motion to dismiss for failure to state a claim. The Scotts have alleged that they did not receive notice before their eviction. On this motion, the court must accept the Scotts' allegation as true.

In sum, the complaint adequately alleges that Diamond acted under color of state law when it evicted the Scotts pursuant to the writ of assistance. In addition, the complaint adequately alleges a protected property interest. Accordingly, the Scotts' complaint satisfies the two elements of a section 1983 action.

**B. *Post–Deprivation State Remedy***

Diamond contends that even if the Scotts had a protected property inter-

---

6. The Scotts correctly note that once a property right is created, a state may not authorize the deprivation of that right without appropriate procedural safeguards. *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985); *Davis Oil Co. v. Mills,* 873 F.2d 774, 783 (5th Cir.1989). Thus, Diamond cannot avoid due process implications by claiming that it followed state procedures in evicting the Scotts.

7. Diamond claims it filed a *lis pendens* notice in the office of the Recorder of Deeds on February 24, 1986. Diamond also states that notice of the mortgage foreclosure action was published to all unknown owners and non-record claimants on June 9, 1987. To verify these assertions,

Diamond attached copies of the *lis pendens* notice and the certificate of publication from Law Bulletin Publishing Company as exhibits to Diamond's motion to dismiss. The court will not consider these exhibits on this motion. Consideration of a motion to dismiss is limited to the pleadings. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Under Fed.R.Civ.P. 12(b)(6), a district court has the authority to convert a motion to dismiss into a motion for summary judgment when the movant submits factual materials outside the pleadings. *See Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988). However, this court declines to do so.

est, they are precluded from bringing a section 1983 action because Illinois provides an adequate post-deprivation state remedy. Deprivations of property resulting from "random and unauthorized" conduct of state actors do not violate due process if a meaningful remedy for the loss is available. *Easter House v. Felder,* 910 F.2d 1387, 1396 (7th Cir.1990), citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See also Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, the deprivation of property in the present case was not random and unauthorized, but was instead the result of Diamond following established state procedures for evicting tenants pursuant to a writ of assistance.

In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court held that the *Parratt* rule does not apply when the deprivation of property is caused by the defendant's use of an established state procedure, regardless of whether the action is taken through negligence, maliciousness or otherwise. *Id.* at 435–36, 102 S.Ct. at 1157–58. More recently, in *Zinermon,* the Court explained that *Parratt* does not apply when the property deprivation is predictable and authorized by the state, and where a state predeprivation hearing was possible. *Zinermon,* 110 S.Ct. at 989–90. In the present case, Diamond followed Illinois procedure in obtaining a writ of assistance and directing the sheriff to forcibly evict the Scotts. Because Illinois authorizes mortgagees to evict tenants without notice pursuant to a writ of assistance, Diamond's actions cannot be considered unpredictable.[8] Moreover, Illinois procedure does not provide tenants like the Scotts with notice and an opportunity to be heard before they may be forcibly evicted.

For the foregoing reasons, the court concludes that Diamond's alleged actions were not random or unauthorized. Under *Logan*

and *Zinermon,* the Scotts may sue Diamond under section 1983 for property deprivations without due process of law.

### C. *State of Mind Allegations*

Diamond contends that the complaint fails to allege facts which would support a reasonable inference that Diamond acted "willfully, recklessly, or with callous indifference to" the Scotts' procedural due process rights. Complaint ¶ 33. However, according to the complaint, when Diamond arrived at the property with the sheriff's agents, William Scott informed defendants that he had not been served with any written notice of a court proceeding affecting his tenancy. *Id.* ¶ 28. Diamond then allegedly directed Deputy Branch to immediately and forcibly evict the Scotts and to deposit the Scotts' belongings on the street. *Id.* ¶ 29. These allegations are sufficient to support a reasonable inference that Diamond acted with at least callous indifference to the Scotts' due process rights.

### CONCLUSION

The motion of Sheriff O'Grady and Deputy Branch to dismiss the complaint against them is granted. Sheriff O'Grady and Deputy Branch are dismissed from this action with prejudice. The motion of Diamond Mortgage Corp. of Illinois to dismiss is denied.

---

**8.** Diamond takes the untenable position that its action was unpredictable because Diamond could not have foreseen that Holder would fail to inform the Scotts of the judgment of fore-

closure or impending eviction. Under *Parratt,* the unpredictable action must be that of the defendant, not the conduct of plaintiffs or another third party.